IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT L. GARY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 10-2082 |
| | : | |
| GAURI NANDAN | : | |
| *d/b/a HOLIDAY INN CENTER CITY* | : | |
| *ALLENTOWN*, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                              **October 5, 2012**

In this action, Plaintiff Robert L. Gary, a former employee of a Holiday Inn in Allentown,

Pennsylvania, brings claims against Defendants Gauri Nandan, L.P. (Nandan), his former employer;

Richard Lobach, the former Holiday Inn general manager; and Intercontinental Hotels Group (IHG)

pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 1981, 1983, 1985(3), and

1986. Gary's claims arise out of the termination of his employment in March 2009, which Gary

contends was in retaliation for his complaints about racial discrimination to which he was subjected

at the Holiday Inn.

This Court previously dismissed some of Gary's claims brought against Nandan and Lobach.

*See* Sept. 30, 2011, Order, ECF No. 29; Dec. 9, 2011, Order, ECF No. 31. Thereafter, Nandan,

Lobach, and IHG filed motions for summary judgment as to all remaining claims against them. On

September 4, 2012, this Court heard argument on Defendants' summary judgment motions, and other

pending motions. At the argument, the Court granted Defendants' summary judgment motions,

explaining the basis for the decision on the record. Subsequently, the Court entered an Order

granting those motions and entering judgment in favor of Defendants and against Gary for the

reasons stated on the record. *See* Sept. 5, 2012, Order, ECF No. 51. The Court incorporates a copy

of the official transcript of the September 4 proceeding (attached hereto as Exhibit "A") to this Memorandum.

Accordingly, and as set forth in this Court's September 5, 2012, Order, IHG's motion for summary judgment is granted; judgment is entered in favor of IHG and against Gary on all counts of Gary's Amended Complaint. Nandan and Lobach's motion for summary judgment is granted; judgment is entered in favor of Nandan and Lobach and against Gary on Counts I, V, and VI of Gary's Amended Complaint. In addition, Gary's cross-motion for summary judgment is denied, and Gary's oral motion to amend his amended complaint is also denied. Lastly, IHG's motion for sanctions is granted insofar as all claims are dismissed against IHG.

BY THE COURT:

Juan R. Sánchez, J.

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT L. GARY, | ) | 10-CV-2082 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| GUARI NANDAN, et al, | ) | Philadelphia, PA |
| | ) | September 4, 2012 |
| Defendants. | ) | 1:59 p.m. |

TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE JUAN R. SANCHEZ
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          ROBERT L. GARY, PRO SE
                            P.O. BOX 56
                            Hellertown, PA   18055


For the Defendants          PAUL G. LEES, ESQUIRE
Gouri Nandan and            MARSHALL, DENNEHEY, WARNER, COLEMAN
Richard Lobach:             & GOGGIN
                            1495 Valley Center Parkway
                            Suite 350
                            Bethlehem, PA   18017

For the Defendant           ROBERT P. FLOYD, III, ESQUIRE
Intercontinental            CONSTANGY, BROOKS & SMITH LLP
Hotel Groups:               4100 Monument Corner Drive
                            Suite 520
                            Fairfax, VA   22030



Audio Operator:             PATRICK KELLY



Transcribed by:             DIANA DOMAN TRANSCRIBING
                            P.O. Box 129
                            Gibbsboro, New Jersey   08026
                            Office:  (856) 435-7172
                            Fax:     (856) 435-7124
                            E-mail:  dianadoman@comcast.net



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

## I N D E X

ARGUMENTS:                                                    PAGE

Reference:  IHG's motion for summary judgment

  By Mr. Floyd                                            5,  15

  By Mr. Gary                                             7,  18

Reference:  IHG's motion for sanctions

  By Mr. Floyd                                            19,  24

  By Mr. Gary                                             21

Reference:  Nandan & Lobach's motion for summary judgment

By Mr. Lees                                                 28,  45

By Mr. Gary                                                 35


FINDINGS OF THE COURT:                                        PAGE

  By Judge Sanchez


RULING OF THE COURT:                                          PAGE

Reference:  IHG's motion for summary judgment

  By Judge Sanchez                                        49

Reference:  Nandan and Lobach's motion for

           summary judgment

  By Judge Sanchez                                        50

Reference:  Gary's motion for summary judgment

  By Judge Sanchez                                        53

Reference:  Motion for sanctions

  By Judge Sanchez                                        54

1           (The following was heard in open court at 1:59 p.m.)

2           THE COURT:  You may be seated.  Thank you very much.

3    This is the matter of Robert L. Gary versus defendant Guari

4    Nandan, doing business as Holiday Inn Center City Allentown,

5    and defendant International Hotels Group (sic), IHG, defendant

6    Richard Lobach -- as well as defendant Richard Lobach.  I

7    believe we have Attorney Lees, Attorney Floyd, and we have Mr.

8    Gary, correct?

9           MR. GARY:  Correct.

10          MR. LEES:  Correct, Your Honor.

11          MR. FLOYD:  Correct, Your Honor.

12          THE COURT:  This is a final pretrial conference.

13   This case is listed for trial I believe in the trial pool for

14   September 10th, and I noted that there were a number of pending

15   motions.

16          I think we have document 41, a motion for summary

17   judgment filed by Intercontinental Hotel Group; document 42,

18   which is a motion for summary judgment filed by Richard C.

19   Lobach and Guari Nandan; document 44, a pending motion for

20   summary judgment filed by Robert Gary; and we have a motion for

21   sanctions filed by Intercontinental Hotel Group.

22          So my goal today is to listen to argument on these

23   motions and then hopefully be in a position where I could

24   decide them immediately.  So let me give Attorney Floyd an

25   opportunity to argue on behalf of the corporation.

1      MR. FLOYD: Your Honor, should I take the podium or

2  should I --

3           THE COURT: However you feel comfortable it's fine.

4      MR. GARY: Your Honor -- excuse me, before we go any

5  further, I have something that I wish to hand to you. Can I

6  approach?

7           THE COURT: What is it? Did you file it?

8           MR. GARY: Yes.

9           THE COURT: And what is it?

10      MR. GARY: I'm just handing you a courtesy copy so

11  that you have it.

12           THE COURT: Okay, you can give it to me. Have you

13  given it to counsel to look at?

14      ˙ MR. GARY: Yes.

15      (Pause)

16           THE COURT: Okay, that's your pretrial memo. Very

17  well. Thank you very much.

18           MR. FLOYD: Good afternoon, Your Honor.

19           THE COURT: Good afternoon.

20           MR. FLOYD: IHG has two motions pending, and I'll

21  take the --

22           THE COURT: Right, one for sanctions and one a motion

23  for summary judgment, if I understand it correctly?

24           MR. FLOYD: Yes, Your Honor, and I'll handle either

25  one that you'd like me to first.

1      THE COURT: Yes, why don't we handle the -- why don't

2   we first address the motion for summary judgment, since I

3   understand that your position is that the International Group,

4   you have a number of companies who belong to the International

5   Group and the Holiday -- doing business as Holiday under Guari

6   Nandan Group here, which is owned by I think two co-owners, had

7   a licencing agreement with one of the companies that works

8   under you -- is under you -- and it was basically under the

9   licencing agreement, an agreement to just use the trade name --

10      MR. FLOYD: That's correct, Your Honor.

11      THE COURT: -- and that you had an agreement that

12   outlines what they have to do to meet the accreditation or to

13   meet the specifications for the use of that training, that your

14   position is that you in no way, shape or form are a party to

15   the agreement, you have no ownership interest in the business

16   or are any agent of -- of the groups of the business, not the

17   employer and not the supervisor, and had nothing to do with the

18   employment decision in this case.

19      That's what I understand from your motion in a

20   nutshell. Am I right?

21      MR. FLOYD: That's right, and I don't think I could

22   have argued it better.

23      THE COURT: Right. Now --

24      MR. FLOYD: And I don't know what I -- I'm sorry, go

25   ahead.

1        THE COURT: Well, my question is -- and I think

2   you've provided some declarations of some affidavits to support

3   your position?

4        MR. FLOYD: That's correct. We've provided an

5   affidavit from one of the representatives for the defendant

6   corporation IHG, and we provided affidavits from the two

7   partners of the partnership interest that owns the hotel.

8        THE COURT: Right.

9        MR. FLOYD: Those affidavits are consistent in

10  representing that there is no relationship between the

11  defendant -- the corporate defendant IHG and the hotel with

12  regard to anything to do with Mr. Gary's employment.

13       THE COURT: All right. Now if I understand it

14  correctly, Mr. Gary has not produced any evidence to dispute

15  that claim.

16       MR. FLOYD: That's correct, Your Honor, despite

17  efforts on our part, patience on our part, and finally

18  obviously we've had to resort to asking the Court to intervene,

19  so they've provided -- Mr. Gary's provided no support at all to

20  support his contention that there is some type of relationship

21  that would entitle him to claim some type of liability on

22  behalf of IHG.

23       THE COURT: Okay. Thank you very much. Let me get

24  his response and then we'll argue -- you will argue the motion

25  for sanctions.

1    Mr. Gary, you pretty much I think understand the

2 pleadings and you heard my question posed to counsel -- the

3 summary I made to counsel based on the pleadings, so my

4 question to you is what evidence -- record evidence or evidence

5 you have that supports your contention that IHG is somehow

6 connected, related to or involved in the employment decision

7 that was made here?

8    MR. GARY: Well, Your Honor, to be frank, IHG

9 approved by that agreement -- the licencing agreement of Mr.

10 Lobach, the General Manager. In the document, it states that

11 they are to approve the manager.

12    So if they approved the manager, he was acting under

13 the policies of the trademark name Holiday Inn, not Guari

14 Nandan doing business as Holiday Inn.

15    THE COURT: Where? Could you point that out to me in

16 the agreement?

17    (Pause)

18    THE COURT: And where did you -- well, I guess that's

19 the document that they produced to you?

20    MR. GARY: Yeah. They produced -- this is the

21 document that he had sent me, then he sent the rest of it, and

22 that was the reason why the Court wasn't given any response to

23 it, because I had to fight with this individual to get these

24 documentations. He didn't send them to me of his own free

25 will --

Gary - Argument                                    8

1          THE COURT:  Well --

2          MR. GARY:  -- at first --

3          THE COURT:  Tell me what you're reading --

4          MR. GARY:  -- but that's beside the point.

5          THE COURT:  Well, tell me where you're reading in

6   this licencing agreement which is between -- be mindful of the

7   fact that this licencing agreement is not between IHG and the

8   defendant owners here, Lobach and Nandan.

9          This licencing agreement is between one of the

10  companies that is part of the group of IHG and the defendant

11  Guari Nandan.  Where are you reading?  You do understand that

12  this is a licencing agreement between Holiday Hospitality

13  Franchising, Incorporated and the Holiday Inn Hotel I believe

14  is the Gary Nandan, LLC?  Do you understand that?

15         MR. GARY:  Well, Your Honor, what I --

16         THE COURT:  Tell me why do you believe -- and what do

17  you think, and point to me where you think that this supports

18  your claim that somehow IHG is the employer or is responsible

19  or liable to be liable for the employment decision that was

20  made in this case.

21         MR. GARY:  IHG, or whomever they're going as, Holiday

22  -- Holiday Hospitality --

23         THE COURT:  These are independent, separate

24  companies.

25         MR. GARY:  I understand that, they're supposed to be

 1    independent, but yet and still this agreement here states the

 2    individuals' names --

 3              THE COURT:  Where --

 4              MR. GARY:  -- whom are acting as Guari Nandan --

 5              THE COURT:  Tell me, where are you?  What page?

 6              MR. GARY:  I'm on the first page of this --

 7              THE COURT:  Okay.

 8              MR. GARY:  -- of the licencing agreement.

 9              THE COURT:  Okay, okay, I see.

10              MR. GARY:  And these are the individuals who are

11    Guari Nandan -- Rasheed (sic) -- however you pronounce his last

12    name and Vinai are the two -- are Guari Nandan acting as Mr. --

13    or Guari Nandan, that's the company name.

14              THE COURT:  Yes, they're the owners --

15              MR. GARY:  Okay.

16              THE COURT:  -- they're the co-owners of Guari Nandan,

17    Inc.

18              MR. GARY:  This agreement is for 904 West Hamilton

19    Street, is where I was employed at through -- by Holiday Inn or

20    Mr. Nandan doing business as Holiday Inn.

21              THE COURT:  Okay.

22              MR. GARY:  Like I stated earlier, these -- this

23    agreement states that the corporation and or -- yeah, what am I

24    saying -- the corporation -- the corporation has to approve the

25    manager.

1         THE COURT:  Where?  Where are you reading that?  Give

2    me the page and number and paragraph.

3         MR. GARY:  And if that's the case and if he's -- if

4    he's acting under the -- under these individuals, then he is

5    held responsible or vicariously responsible for any actions

6    that the general manager has done due to the fact that the

7    corporation approved it.

8         THE COURT:  Tell me where you're reading that.  Point

9    me to the provision in the agreement.

10        MR. GARY:  One second, please.

11        (Pause)

12        MR. GARY:  Page 29, Your Honor.

13        THE COURT:  D?  Paragraph D, Management Designation?

14        MR. GARY:  Yes.

15        THE COURT:  Tell me where -- you're making the

16   argument based on the fact that the hotel at all times must be

17   operated by an acceptable general manager, and it goes on to

18   basically say that the licensor, which in this case will be

19   HHFL, must have -- "cannot have any objections to any proposed

20   general manager and that any contract with respect to the

21   operations of the hotel and such general policies and

22   procedures must comply with the licensor's brand standards."

23   This is limited.

24        MR. GARY:  I understand that.

25        THE COURT:  They are enforcing the name brand.  The

1   brand Holiday Inn is a brand. They are -- the licence allows

2   Guari Nandan, if I understand it correctly, to operate a hotel

3   so long as it is consistent with the brand -- the brand.

4            MR. GARY:  The brand standards.

5            THE COURT:  Right.

6            MR. GARY:  Correct.

7            THE COURT:  So where do you see here that this gives

8   or makes IHG, or even HHFL, liable for the employment decision?

9            MR. GARY:  Let me redirect this, Your Honor.  IHG is

10  responsible for -- well, not responsible -- they approved the

11  general manager.

12           THE COURT:  And so what?

13           MR. GARY:  They're acting under the policies of -- as

14  the --

15           THE COURT:  It's not a question of approve.  They are

16  consistent with their obligation to protect the brand, if I

17  understand it correctly, notwithstanding paragraph 10-J of this

18  licencing agreement.

19           What they are basically saying here is that the hotel

20  should at all times be operated by an acceptable manager to

21  protect their standards.  They're not -- or not suggesting in

22  any way, shape or form that they have to approve the general

23  manager.  Where do you see that?

24           MR. GARY:  No.  I have read that, that they -- they

25  stated in here that they approve the general manager and they

1   can't -- they have stipulations on Mr. Barchwal and Mejethia,

2   or however you pronounce their names, those individuals and or

3   Six Continental Hotel Group, just like I said.  That's why the

4   argument is they all have the same address and like you said,

5   they're a whole bunch of collective individuals.

6          That way they can avoid liability by saying oh, it's

7   this, it's that, it's this, it's that -- the whole point is

8   they were acting under the Holiday Inn Associates Book --

9   that's from Holiday Inn itself.  He said that he fired me due

10  to the fact that from the policy that's in Holiday Inn's

11  handbook.

12         If that's the case, who made the handbook ?  IHG?

13  The corporation?  So if that's the case, the policies and or

14  customs that were handed down or the action that was taken by

15  the general manager during the course of his employment, he

16  stated that he fired me -- in his affidavit -- because of what

17  was said in the employee handbook.

18         So if the employee curses, which I'm -- what I'm

19  supposed to had to got fired for (sic) -- at anyone, that I am

20  supposed to be terminated immediately.  But yet and still the

21  defendant cursed at me first.  Nothing happened to him.

22         I mean, I don't seem to understand why is it that the

23  employer can tell the employee you cannot curse, but I can

24  curse at you and you are just to get over it, and or fire me

25  for having no legitimate business purpose of firing me in the

1  first place.  That's what needs to be proved here, not the mere

2  fact that -- it does not matter.  They approved the actions,

3  they approved Mr. Lobach to be a general manager at 904 West

4  Hamilton Street, and this agreement shows that.

5        So regardless, if Mr. Lobach was acting under these

6  policies, then they are vicariously liable under respondeat

7  superior since he is acting under their rules and regulations.

8        THE COURT:  Okay.  Is that the only thing you can

9  point out -- point to to support your argument that IHG and I

10  believe the other company -- HHFL are liable for the employment

11  decision that was made back on I believe February 18th, 2008?

12        MR. GARY:  February 18th, 2008 -- you mean March?

13  You mean hiring me?  That's February 18th.

14        THE COURT:  The employment -- the employment decision

15  that was made.

16        MR. GARY:  The adverse decision of firing me?

17        THE COURT:  Yes.

18        MR. GARY:  Was March 14th.

19        THE COURT:  With regard to that decision, do you have

20  March 14th?

21        MR. GARY:  Again, Your Honor, I --

22        THE COURT:  Of 2009.

23        MR. GARY:  -- restate, the general manager was

24  acting --

25        THE COURT:  Listen to my question.  My question is is

1  that the only record evidence that you're relying on to support
2  your argument that these corporations are liable for the
3  employment decision that was made back on March 14th of 2009?
4  Is that the only record evidence that you have to support your
5  contention or your argument?

6          MR. GARY:  Yes.  Yes.

7          THE COURT:  So you're relying strictly on the
8  licencing agreement -- I believe it will be page 29, paragraph
9  D, right?

10          MR. GARY:  Well, Your Honor, there are -- like in
11  here it says that they are selling a system, okay? Mr. Lobach
12  was acting under the system.  I was in the system due to the
13  fact that hey, if I do something wrong, then whatever the
14  policy is, the discipline stage is from this -- from the
15  corporation, from Holiday Inn, the trade name Holiday Inn, so
16  if Mr. Lobach is a general manager of Holiday Inn and he's
17  acting under the policies of this agreement and or they
18  approved his actions, then yes, they are held under respondeat
19  superior vicariously liable for anything that he does that's
20  against State and Federal law.

21          THE COURT:  Do you have any other argument to make in
22  support of your claim that these corporate entities are liable
23  for the employment decision terminating your job back on March
24  14th of 2009?

25          MR. GARY:  As partners with Guari Nandan --

1           THE COURT:  No, no --

2           MR. GARY:  -- doing business as Holiday Inn, yes.

3           THE COURT:  -- this is not --

4           MR. GARY:  It's a partnership, Your Honor.

5           THE COURT:  Okay, this is the motion of the corporate

6    entities.  Do you have any other argument in support of your

7    claim that they are liable to you for the employment decision

8    that was made back on March 14th of 2009?

9           MR. GARY:  No, that's it.

10          THE COURT:  Okay.

11          Counsel, would you respond?  I think this is a

12   licencing agreement, but would you explain because Provisions

13   -- he's reading Provisions -- I think when you read Provisions,

14   page 19, J, Management of the Hotel and you read page 29,

15   paragraph D, Management Designation, he's reading into it that

16   the fact that you approved the general manager makes you the

17   employer, I suppose.

18          MR. FLOYD:  I've heard the argument, Your Honor, and

19   he is assuming a lot of facts that aren't in the record and

20   that don't exist in order to jump to that conclusion, and

21   indeed, even if there was some -- some ability for the

22   corporation to approve of a manager that was selected by the

23   partnership, that would be the extent of it.

24          There's no other involvement whatsoever with the

25   manager's decisions with regard to the day to day running of

1    the hotel.  And indeed, if you turn to page 23 of the same

2    agreement, there's explicit language outlining that there is no

3    agency relationship between the parties, and it points out not

4    only agency, but fiduciary employment relationship or any other

5    type of relationship.

6         In addition to that, Mr. Gary's arguing that -- and

7    again, we wouldn't concede that these policies that he's

8    talking about were policies of the defendant corporation, but

9    he's not arguing that the policies were a problem, he was

10   arguing that the individual who was acting under the policies,

11   you know, did something improper to him, not that the policies

12   themselves were -- were somehow at fault or somehow related to

13   his termination.

14        THE COURT:  Yes, but I think he's telling me he's

15   pointing to those policies as evidence that you are in effect

16   in either an agency relationship with the Nandan group, or that

17   you are somehow liable; you're the employer --

18        MR. FLOYD:  Right, I understand.

19        THE COURT:  -- because they're following your

20   guidelines and your policies.

21        MR. FLOYD:  Right.  And those are not our guidelines

22   and our policies, the defendant's guidelines and policies, and

23   in addition to that, he would need much more than that under

24   the law to create any kind of a relationship that would -- that

25   would get to agency.  There's no day to day control whatsoever

1  of the employment relationship.  In fact, IHG or Hospitality,

2  even though they're not even a defendant here, didn't even know

3  Mr. Gary was employed.

4          They didn't know he was terminated.  There's no

5  reporting relationship between the parties -- between the hotel

6  -- the hotel doesn't have to call to the IHG and say hey, we're

7  thinking about terminating this guy, hiring him, firing him --

8  you know, doing any kind of discipline.  There's absolutely no

9  day to day relationship at all with regard to the employment

10 relationship.

11         THE COURT:  This is merely a licencing agreement that

12 allows the Nandan corporate entity and the owners to use the

13 brand name of Holiday Inn.

14         MR. FLOYD:  Correct.  It's really more for the

15 front-of-the-house, Your Honor.  What the intent of the

16 licencing agreement is is so that a customer at Holiday Inn no

17 matter where they go across the country will experience the

18 same type of hotel, the same basic -- well, I'll call it again

19 -- in the business we call it the front-of-the-house procedures

20 -- the way the hotel looks, the way the food is served, the way

21 the logos look, the cleanliness of the hotel -- that sort of

22 thing.

23         That's what the licencing agreement is meant to

24 control, not the individual day to day operations in the

25 back-of-the-house or the employment relationship.

1          THE COURT:  Okay.  Very well.

2          Anything else, Mr. Gary?

3          MR. GARY:  Well, yeah, Your Honor, I have one other

4   thing to say about that.  Mr. Floyd is going past the fact that

5   in this agreement, Guari Nandan is not even supposed to use

6   Holiday Inn, they're supposed to have their own name up there.

7          THE COURT:  Okay.

8          MR. GARY:  But and in fact when I was working there,

9   everything that I had on said Holiday Inn on it, okay?  Not

10  Guari Nandan doing business as Holiday Inn.  It said Holiday

11  Inn.

12         THE COURT:  Okay.

13         MR. GARY:  And in here somewhere there states that

14  they're not even supposed to use their name, they're supposed

15  to have their own name in the hotel somewhere, so I just don't

16  understand how he can even remotely say that they have no

17  recollection or no type of relationship with their business

18  partner Guari Nandan or Mr. Barchwal or Majethia -- whatever --

19  however you pronounce his last name, I don't know -- I can't

20  pronounce it, but those two individuals are acting as Guari

21  Nandan.

22         THE COURT:  Okay.

23         MR. GARY:  Like I said, the whole thing to me is it

24  just seems shameful that the mere fact that I have to come here

25  and argue to just enforce an employment contract, it's

1  ridiculous. It seriously is. And for me to get fired for

2  someone else cursing at me and the general manager doing the

3  same, that's why we're here.

4           THE COURT: Very well.

5           MR. GARY: We're not here for no other reason. I

6  have a right to make 'em enforce contracts, regardless if it's

7  at will or not.

8           THE COURT: Okay.

9           Well, you have a motion for sanctions. Let me hear

10  your argument on the motion for sanctions, Attorney Floyd.

11           MR. FLOYD: Your Honor, the defendant -- corporate

12  defendant IHG had issued in a timely manner its discovery

13  request, interrogatories, requests for production, and

14  admissions.

15           We received no response whatsoever from the plaintiff

16  in response to those requests, despite the defendant having

17  written letters to Mr. Gary asking whether or not he would --

18  whether or not he was going to respond. He indicated in

19  correspondence that he would respond.

20           But, he failed to respond. At deposition, the

21  defendant also asked Mr. Gary if he would respond to

22  plaintiff's discovery, and I gave him the option during

23  deposition at that time to either have us go through during

24  deposition the answers to the interrogatories and requests and

25  provide documents, or that he could later -- and we picked a

1   date certain to provide responses to discovery, and Mr. Gary at

2   that time agreed that he would provide written responses to

3   defendant's discovery, all of this well past -- well past the

4   deadline.

5         When that deadline finally passed, we had asked the

6   Court to intervene and to compel Mr. Gary to respond and Your

7   Honor indeed ordered -- I think it was August 1st -- you

8   granted IHG's motion to compel and ordered plaintiff to provide

9   full and complete responses without any objections, and went on

10  to warn plaintiff that if he did not respond within the time

11  provided, that sanctions would be imposed to include

12  essentially disallowing plaintiff from making any claims or

13  supporting any claims for liability against -- against IHG.

14        Your Honor, we've gone to extreme lengths to try to

15  defend this case and obviously we are handicapped when we don't

16  have any idea as to the nature of the claims and the facts

17  supporting Mr. Gary's claims.

18        And we've had to essentially guess at what his claims

19  are and guess at what the facts and circumstances are to

20  support those claims, and I think that's prejudicial and

21  disadvantages the defendant.

22        And here we are on the eve of trial and I think it

23  would be prejudicial to allow Mr. Gary to go forward with a

24  trial and surprise the defendant at trial with evidence that we

25  did not have an opportunity to review before that, so we're

1  asking the Court to grant our motion for sanctions.

2          THE COURT: And the sanction that you are seeking for

3  me to impose is that I preclude him from proceeding on his

4  claims against IHG, correct?

5          MR. FLOYD: That's correct, Your Honor.

6          THE COURT: And that's the only sanction that you're

7  asking me to impose at this time, right?

8          MR. FLOYD: Well, Your Honor, if I could also ask

9  that the claims be dismissed at this point and supplement my

10 motion, I would also ask that the claims be dismissed because I

11 think that's the only way to avoid prejudice in this case.

12         THE COURT: Well, if he can't proceed he's not going

13 to be able to do it on the claim, but you're asking me to go a

14 step further and just dismiss the claims outright at this

15 stage?

16         MR. FLOYD: As an alternative, Your Honor, yes.

17         THE COURT: Okay.

18         MR. FLOYD: Thank you.

19         THE COURT: Very well. Your response, Mr. Gary?

20         MR. GARY: Your Honor, at the deposition, Mr. Floyd

21 asked me questions there on the record, as well as Mr. Lees,

22 together, not separately. Together they asked, and separately

23 they asked. He's asking for sanctions from me stating that I

24 had not given him anything that said that or tied in together.

25 I cannot tie him (sic) together until he sent me this

documentation, which is this licencing agreement.  That's the

only thing that I have to bind him together with Guari Nandan

doing business as Holiday Inn.

That's self-evident just by this licencing agreement

in the first place, and just for the mere fact that it says 904

West Hamilton Street and that's the location of where this

entity stands and where I worked at.

But I -- I really think that Mr. Floyd has some gall

to even ask me for sanctions when you didn't even send me the

proper things on time.  I had to -- when I spoke to you the

time when you said that I will be over there, I need to be at

Mr. Lees' office for a deposition, I told you that he had given

me incomplete materials.

He stated right on the record that if I had any

problem with what he sent me that I wasn't supposed to say it

to you, but I was supposed to send him a correspondence in some

type of form asking for that information, when he should have

just afforded it to me in the first place if he was acting in

good faith.

And that's the problem we have here, neither one of

these individuals have been acting in good faith so that's my

argument.

If you wish to impose sanctions, I could ask for

injunctive -- I need to as a matter of fact, I might as well

just ask the Court for leave to amend the complaint to add for

Gary - Argument                                          23

1   injunctive relief and like declaratory relief due to the fact

2   that I need to know what rights that I'm actually -- what

3   rights and liabilities I have in the first place since we need

4   to do that since we're talking about damages anyway in the

5   first instant (sic).

6          So I would like to motion the Court at this time to

7   be able to amend my complaint to include 2000 and D -- oh wait,

8   let me rephrase that -- 42, 2000 and D, which is a statute

9   which if this company is held to have been discriminative

10  toward me for any activities or programs that receive Federal

11  funds, then they are to lose that funding from the Federal

12  Government.

13         So, if he wants to sanction me for not "giving him

14  discovery" or something that I had to wait for him to give to

15  me, and if it's the Court's position to grant that motion, then

16  like I said, I'd rather just amend the complaint to add in

17  every individual.

18         Like you said, facts, I need to add in facts like the

19  Pennsylvania Human Relations Commission not holding a hearing

20  in a timely frame to even deal with this and only issue me a

21  right to sue letter without due process of law.

22         So that's why I said we need to enjoin -- I need to

23  enjoin them, so I'm asking the Court for amendment at this time

24  if that is at all possible for that injunctive relief --

25         THE COURT:  Very well.

Floyd - Argument                                      24

1        MR. GARY:  -- if the Court will --

2        THE COURT:  Very well.

3        Let me ask Attorney Floyd, when did you issue the

4   request for interrogatories and the request for production of

5   documents?  Could you just put on the record when that request

6   was made?

7        MR. FLOYD:  Your Honor, I apologize.  I don't -- I

8   don't have with me those documents but in my motion, I did

9   outline those dates.  In my original motion to compel, I

10  outlined all the dates and all of the exchanges between --

11       THE COURT:  Okay.

12       MR. FLOYD:  -- the defendant.

13       THE COURT:  Yes, we don't have the attachment, do we?

14       (Pause)

15       THE COURT:  I have a -- let me just put on the record

16  I have defendant's Intercontinental Hotels Group first request

17  for admission to plaintiff.  That was docketed on July 25th,

18  2012 -- I'm sorry, this is

19       MR. FLOYD:  Your Honor, if it pleases the Court, I'd

20  refer the Court to document number 40 --

21       THE COURT:  Okay, 40 --

22       MR. FLOYD:  -- and paragraph one.  "On March 21st,

23  2012 IHG served plaintiff with interrogatories and requests for

24  production, see Exhibit 1."

25       Of course we didn't initially file the documents in

Floyd - Argument                                    25

1  accordance with the rules, but I did attach them once we had to

2  move for -- once we have to move for a motion to compel.

3            THE COURT:  Okay.  And he never responded to those?

4            MR. FLOYD:  That's correct, Your Honor.

5            THE COURT:  Despite the fact that you asked him

6  repeatedly with letters, right?

7            MR. FLOYD:  That's correct, Your Honor --

8            THE COURT:  Okay.

9            MR. FLOYD:  -- and those letters and those dates are

10 outlined in document 40.

11           THE COURT:  And despite I believe in this case we had

12 a conversation -- refresh my recollection, because I  think I

13 talked to -- he first refused to attend the first deposition

14 that had been scheduled?

15           MR. FLOYD:  That's right, Your Honor.

16           THE COURT:  You filed or you requested that I hold a

17 telephone conference and I held a telephone conference and at

18 that telephone conference I directed him to make himself

19 available for deposition, right?

20           MR. FLOYD:  That's correct, and that was in June.

21           THE COURT:  And he made himself available for that

22 deposition, but he did not file an answer to the

23 interrogatories or produce any documents that had been

24 requested?

25           MR. FLOYD:  That's correct, Your Honor, and at that

1 | time I gave him the opportunity to walk through while he was

2 | with us to make it convenient for him, and he said, well, I'm

3 | not going to do that and file them in written form and he said

4 | he'd file them in written form at that June 26th deposition.

5 |         THE COURT: He seems to be thinking that the

6 | deposition is in lieu of the fact that he had to answer those

7 | interrogatories and produce those documents.

8 |         MR. FLOYD: I think he -- that may be right, but it

9 | was clear that it was not because we had that discussion.  He

10 | did not want to sit there because indeed, about 2:00, he said

11 | to us, I have to go, and he was not willing to stay around and

12 | to go through the interrogatories and the requests for

13 | admissions and --

14 |         THE COURT: How are you prejudiced if he did not

15 | answer or give you the answers to the interrogatories or

16 | requests for admissions and the deposition took place in any

17 | event --

18 |         MR. FLOYD: Well, the --

19 |         THE COURT: -- so you have --

20 |         MR. FLOYD: -- the deposition, at that time we had

21 | agreed that he would provide the responses to the

22 | interrogatories and to the requests for production and to the

23 | requests for admissions, so I did not on the record during the

24 | deposition go through all of the information that we had

25 | requested in those interrogatories and requests for documents,

1 on the understanding that Mr. Gary would be responding in

2 writing, which he should have done before his deposition, so I

3 was prejudiced in going to the deposition not having the

4 responses to the discovery.

5        And I gave him another opportunity at the deposition

6 to provide written responses, which of course is -- that puts

7 me at a disadvantage also.

8        But even with that additional opportunity, he failed

9 to provide any responses and the prejudice is I don't know, I

10 don't have facts and circumstances that he alleges support his

11 claim and, you know, I'm faced with a trial having to guess

12 still what it is that he is relying on to support his claims.

13        THE COURT: Very well. Thank you.

14        MR. FLOYD: And, Your Honor, one last point, if I

15 could just to respond to Mr. Gary's allegations that I acted

16 improperly with regard to his requests.

17        He sent us a letter and essentially asked -- and I

18 don't have it in front of me but it essentially asked for --

19 you know, support that there was an agency relationship between

20 IHG and the hotel.

21        We don't have anything like that. I mean, that's

22 obviously part of our argument. But we did send him the

23 licence agreement, but I sent him only the relevant parts of

24 the licence agreement, which is proper under discovery rules

25 and when he got that, he said I want the whole agreement and we

1   sent him the whole agreement.  There was nothing improper about

2   the way we responded to his discovery.

3            THE COURT:  Very well.  Thank you very much.

4            Let me turn to the defendant -- defendants Nandan and

5   Lobach, motion for summary judgment at document 42, so I'll ask

6   for your patience, Attorney Floyd, and my goal is to try to

7   rule on this case right on the record.

8            MR. FLOYD:  Thank you, Your Honor.

9            MR. LEES:  Good afternoon, Your Honor.

10           THE COURT:  Good afternoon.

11           MR. LEES:  May it please the Court, Paul Lees on

12  behalf of defendants Gary Nandan and Mr. Lobach.  Pending

13  before the Court is the defendant's motion for summary

14  judgment.  As Mr. Gary has himself said today, the only issue

15  before this Court is why was he fired.

16           And what we've produced for the Court in response to

17  his complaint seeking damages under Title VII and under 1981 is

18  a fact record and affidavits establishing why he was fired.

19  Mr. Gary was hired back in February of 2008 and worked at the

20  Allentown Center City Holiday Inn.

21           When he was hired he was given a copy of the hotel's

22  Associate Handbook.  It set forth the general information about

23  the hotel, employee-related programs and also the personnel

24  policies and procedures to be employed at the hotel.

25           Mr. Gary confirmed that he did in fact receive that,

1  that he read it and that he even signed a form at the end of

2  the Associate Handbook confirming that he had received it.

3  Within that handbook, there were certain critical offenses

4  outlined that included cursing in the presence of hotel guests,

5  fighting in front of hotel guests, and which merited immediate

6  termination from employment.

7          Going forward, Mr. Gary also confirmed during the

8  course of his deposition that while he was initially employed

9  as a houseman, that one of the duties and responsibilities

10  which he was asked to do on various occasions was utilize the

11  hotel van to transport hotel guests to and from the hotel to

12  the airport and to the local shopping mall.

13          On March 14th, 2009 he was engaged in doing that and

14  when returning to the hotel, was confronted by an irate hotel

15  guest who was part of an airline flight crew who blamed Mr.

16  Gary for making them late.  Mr. Gary and this hotel guest got

17  into a verbal confrontation where words were exchanged and

18  according to Mr. Gary, the hotel guest cursed at him.

19          THE COURT:  Does it matter whether the hotel guest

20  cursed at him first and he responded in kind or does it matter

21  that he's -- in some of the pleadings, he's taken the account

22  that he learned of the cursing from someone else and that

23  supposedly the person that he cursed at did not even hear him

24  say what he admitted to have said.

25          MR. LEES:  Well, that --

1          THE COURT:  No, do you understand my question?

2          MR. LEES:  I do.

3          THE COURT:  Does it matter?

4          MR. LEES:  And I don't think it matters because first

5    of all, I'm not sure that Mr. Gary's in a position to offer

6    testimony as to what this airline pilot heard or didn't hear.

7          Secondly, by his own deposition testimony, while he,

8    Mr. Gary, didn't hear the hotel guest initially curse at him,

9    when his co-worker said oh, did you hear what he just said to

10   you, that's when Mr. Gary turned to the airline pilot and said

11   well no sir, and cursed at him.

12         And so it was crystal clear that Mr. Gary did

13   confront this hotel guest and cursed directly at him and

14   certainly Mr. Gary knew that the hotel guest heard him.  So --

15         THE COURT:  Well, he admitted that in his deposition,

16   right?

17         MR. GARY:  Negative.

18         MR. LEES:  He did.  And he also admitted in his

19   deposition --

20         MR. GARY:  I object, Your Honor.

21         THE COURT:  Excuse me, this is argument, and I will

22   look at the deposition, but go ahead.

23         MR. LEES:  Mr. Gary also freely admitted that he knew

24   he shouldn't have cursed at this hotel guest and he said that

25   in his deposition.  So what we have under the McDonnell Douglas

1    burden-shifting analysis is while Mr. Gary certainly has

2    established --

3            THE COURT:  But this is a little bit more than the

4    confrontation with the guest.  He then did not heed the general

5    manager's instructions to go home and cool off.

6            MR. LEES:  That's absolutely correct and that's set

7    forth in Mr. Lobach's affidavit, as well as in the termination

8    memo itself that was issued following Mr. Gary's termination.

9    And what Mr. Lobach essentially indicated -- and I had made Mr.

10   Lobach available for a deposition the same day as Mr. Gary.

11           Mr. Gary chose not to depose Mr. Lobach, which is why

12   I supplied the Court with an affidavit as opposed to a

13   deposition transcript.  But what Mr. Lobach has indicated is he

14   was getting ready for a hotel inspection that was taking place,

15   he learns from another hotel employee that Mr. Gary had gotten

16   into some type of verbal dispute with a hotel guest and cursed

17   at him.

18           He then speaks with Mr. Gary and tells Mr. Gary,

19   listen, I don't want to get into what went on between you and

20   the guest, go home for the rest of the day.

21           Mr. Gary won't have anything to do with it and Mr.

22   Gary instead continues to create a scene in the hotel lobby in

23   front of other guests where he's fighting and arguing with the

24   hotel manager, and  that's insubordination, which is yet

25   another basis for the hotel manager's decision, that he gave

1  Mr. Gary the opportunity to go home and cool off and he was

2  going to let well enough be and he was going to use the

3  additional time to try to find out what happened to make a

4  decision as far as what he was going to do with Mr. Gary as a

5  result of his cursing at this hotel guest.

6        But now not only has he cursed at a hotel guest, but

7  he's compounded his problems and his infractions by now arguing

8  with the hotel's general manager and you can't have that type

9  of insubordination when you're running a hotel, and that is why

10 Mr. Gary was terminated.  And then --

11       THE COURT:  So either or both are sufficient in and

12 of themselves and critical enough to justify immediate

13 termination of his employment status?

14       MR. LEES:  They are.  In fact, that's clearly set

15 forth as a critical offense under the personnel guidelines in

16 the Associate Handbook.

17       THE COURT:  Okay.

18       MR. LEES:  And so we have under this McDonnell

19 Douglas burden-shifting analysis a legitimate basis for our

20 decision and the burden then shifts back to Mr. Gary to

21 establish that well, what we said shouldn't be believed and

22 that this was just pretext, that we made it up, and that even

23 though it says in our employee manual that if you curse in the

24 presence of a hotel guest you're going to be terminated

25 immediately, that that's not really why he was terminated, it

1 must have been because of race.

2          And even though Mr. Gary admits in his deposition

3 that his confrontation with this hotel guest, Mr. -- the

4 airline pilot, Mr. Manley, had nothing to do with race, he

5 didn't say anything racial to Mr. Gary, Mr. Gary did not curse

6 back at him because the hotel pilot was white, he was just

7 angry that the hotel pilot in his mind disrespected him and so

8 he responded in kind.

9          This was not racial motivation, this was not racially

10 motivated, this was not a violation of either Title VII or

11 1981, Your Honor.  Plaintiff has the burden to establish not

12 that this was an unfair decision or that another employer

13 wouldn't have treated him this way or that it wasn't a good

14 business decision.

15          He has the burden to establish that this was racially

16 motivated and he has not established that.  And the absence of

17 him coming forward with a triable issue of fact, this matter

18 should not be allowed to proceed forward to a jury trial.

19          THE COURT:  He seems to be suggesting that there was

20 some comment or comment made by the general manager at some

21 unspecified time to some unspecified person that led him to

22 believe that the decision was motivated by his race.

23          MR. LEES:  He does, Your Honor.  He says in his --

24          THE COURT:  But that's a self-serving statement that

25 he made I think in the pleadings.  What evidence is there?

1 What evidence has he produced on that issue?

2          MR. LEES:  He has produced no evidence on that issue.

3 He simply describes an alleged hearsay statement that was made

4 by the hotel manager who was -- and I think Jeff E. he

5 describes as the person who said that, he hasn't produced an

6 affidavit from Jeff E.

7          He certainly didn't confront Mr. Lobach or take Mr.

8 Lobach's deposition to ask him questions or to cross-examine

9 him on any issues presented by that.  And moreover, plaintiff's

10 own description of what took place I think more aptly

11 illustrates why it shouldn't be used as a basis for inferring

12 racial motivation, but actually just the opposite.

13          What had occurred between Mr. -- allegedly occurred

14 between Mr. Lobach and this other employee, Jeff E., was Jeff

15 E. was being corrected for making what was viewed as a racial

16 statement to a co-worker saying that he was going to slap the

17 hell out of this white boy and what he said to allegedly -- Mr.

18 Lobach took him into his office and said you can't do that.

19          You wouldn't like it if somebody classified you by

20 your race, you can't classify other people by their race and he

21 certainly did use, according to Mr. Gary, the "N" word but in

22 the context in which it was used, there's no inference that it

23 was being used in a discriminatory fashion, nor is there any

24 way -- this had nothing to do with Mr. Gary so why would what

25 happened between Mr. Lobach and these two other workers have

1  anything to do with Mr. Gary has never been established.

2           There's been no evidence proven and Mr. Gary has not

3  come forward with any evidence to show a link or causal

4  connection between that alleged event and his termination on

5  March 14th, 2009.

6           THE COURT:  All right.  So you are asking me to

7  dismiss Counts 1, 5, and 6 as to Guari Nandan and as to Mr.

8  Lobach, Count 1, Count 5 and Count 6, right?

9           MR. LEES:  Correct, Your Honor, which are the

10 remaining claims under Title VII and 1981.

11          THE COURT:  Right, which all relate to why was he

12 fired --

13          MR. LEES:  That is correct.

14          THE COURT:  -- to the question of as to the reasons

15 why he was fired.

16          MR. LEES:  That is correct, Your Honor.

17          THE COURT:  Okay.

18          MR. LEES:  Thank you, Your Honor.

19          THE COURT:  Thank you very much.

20          Mr. Gary.

21          MR. GARY:  Yes, Your Honor.

22          THE COURT:  Your response?

23          MR. GARY:  My response, Your Honor, is that Mr.

24 Lobach, the general manager, has shown to me on more than one

25 occasion and others of my race and other co-workers of mine

1    that he does not too particularly like people of color.

2            Due to the fact that Mr. Lees is beating around the

3    bush and not saying -- use the terms as they were written, the

4    fact of the matter is when Mr. Lobach cursed at or -- well,

5    excuse me -- cursed at me when he first came out of the door

6    telling me that I need to get the fuck over it, he's violating

7    his own policies that he's telling me not to do, okay?

8            I was very cordial with Mr. Manley, who was irate

9    because I was doing what my general manager, Mr. Lebran

10   (phonetic) told me to do in the first instance.  After I

11   brought it to Mr. Lebran's attention that the airplane pilots

12   were going to be late, he still directed me to go and to go

13   pick up a guest from the Lehigh Valley Mall.

14           When I returned, Mr. Mowet (phonetic) I think that's

15   how you pronounce his last name -- his first name is David,

16   he's the van driver and at no time during my employment with

17   this company that was -- a van driver was part of my title.

18           I was a chambermaid first, then I moved to be a

19   houseman additionally added on due to the fact as I stated in

20   my past inquiries to the Court that Mr. Lobach wanted me to

21   clean some rooms when I had moved to the position of houseman,

22   I told him I'm not cleaning rooms and doing my other work

23   without being compensated for it.

24           So he said okay, no problem.  That's when I was moved

25   up to $9.50 an hour.  He didn't say that my job was

1  chambermaid, houseman, night manager, van driver and I don't

2  even have a driver's licence in the first instance.  So with

3  what the attorney is stating, as well as I have a notice of

4  determination from the Pennsylvania -- excuse me -- Department

5  of Labor and Industry which states that -- the finding of facts

6  states this.

7         "The claimant was last employed 3/14/2009.  Claimant

8  was discharged for fighting with customer and use of vulgar

9  language.  The employer provided information showing that the

10  claimant was involved in the incident that caused the

11  separation."

12         "The claimant was working at the time of the incident

13  that caused his separation.  The claimant's actions did not

14  show a willful disregard of the employer's interests.  The

15  claimant's actions did not disregard the standards of behavior

16  that the employer had the right to expect from his employees.

17  The claimant's actions do not constitute negligence."

18         "Therefore, the employer has failed in his burden

19  -- therefore under conversation must be allowed."

20         So what I'm telling you, Your Honor, is that if I was

21  terminated for a legitimate purpose, I would have never been

22  able to get Unemployment Compensation in the first instance due

23  to the fact that Mr. Lobach and or -- since he was running the

24  hotel didn't pay my third question earnings or report it to the

25  State of Pennsylvania, which is a violation within itself.

1    But in Mr. Lobach's affidavit that Mr. Lees took from

2  him two days before I was scheduled to -- for that deposition,

3  Mr. Lobach in that deposition state (sic) that he saw the whole

4  thing, he saw me pull up, he saw me get out of the car, he saw

5  me arguing. He didn't see any of that. Now he says that he

6  had a witness that somebody else seen it. I mean, get your

7  story straight.

8    THE COURT: I'm confused. Was Mr. Lobach's

9  deposition ever taken in this case?

10    MR. LEES: It was not, Your Honor. He was --

11    THE COURT: What is he talking about?

12    MR. LEES: I'm not sure, Your Honor.

13    MR. GARY: You don't know what I'm talking about?

14    THE COURT: Excuse me -- I know that he's talking

15  from -- he's made reference to --

16    MR. GARY: Where's the affidavit?

17    THE COURT: -- to the Unemployment Compensation

18  hearing or findings, but was there a deposition taken of Mr.

19  Lobach at all by you or this defendant -- this plaintiff?

20    MR. LEES: There was not, Your Honor.

21    THE COURT: Okay.

22    MR. GARY: No, there wasn't no deposition taken.

23    THE COURT: You never took a deposition of anybody in

24  this case, right?

25    MR. GARY: I haven't took a deposition of anyone in

1    this case --

2              THE COURT:  All right.

3              MR. GARY:   -- no, I have not.

4              THE COURT:  So what I'm relying on is what you have

5    responded to in some of the responses -- pleadings and your

6    memorandum and some of the responsive pleadings to the motion

7    for summary judgment filed by the corporate entity and Guari

8    Nandan, as well as Mr. Lobach, correct?  This is your responses

9    and solely your responses.  You have not taken any independent

10   witness deposition, correct?

11             MR. GARY:  No, I have not taken any --

12             THE COURT:  Okay.

13             MR. GARY:   -- independent witness depositions, but

14   yet and still --

15             THE COURT:  So you --

16             MR. GARY:   -- from the affidavit from Mr. Lobach that

17   was taken two days before my deposition which in that

18   deposition -- in that affidavit, he states that he saw

19   everything.

20             Now he's coming to say that someone else told him

21   that I was arguing -- and people standing there and he was the

22   general manager, like you just said you read my answers to the

23   defendant's motions, then you should also know that how he's

24   going to take a deposition from Mr. Lobach -- or actually

25   excuse me, an affidavit from Mr. Lobach two days before I was

1  to come there, okay?

2         I held my deposition with him, him and Mr. Floyd.

3  Mr. Floyd asked me questions on the record.  Then when I told

4  him that I didn't have time for to answer all of his questions

5  -- so he can't say that I didn't answer any of his questions.

6  That's totally false.  He knows I have answered some of his

7  questions.

8         Just as well, as it was never in my duties to be

9  transporting anyone anyway, and I was doing my job that was

10  delegated to me from my manager which is Mr. Lebron who is now

11  the acting general manager of this Holiday Inn that we are

12  referring to in this case.

13         So how can I get fired for doing what my boss tells

14  me to do and then how can my boss just walk around here like

15  they're -- he can say nigger, he can tell me to get -- get over

16  it.  He's creating a hostile work environment and that's what

17  those documents show or that's what I laid out in my complaint

18  to the Pennsylvania Human Relations Commission in the first

19  instance, whom failed to hold any investigation or any hearing

20  into this matter whatsoever.

21         They just waited until the time frame passed, the 180

22  days or 300 days and after that, they issue a right to sue.

23  That's not justice.  That not the way that this system is

24  supposed to work, okay?

25         In a limited partnership, which is what these

1  individuals are so that they can avoid liability -- oh, I don't
2  know who -- who's responsible, I don't know this, I don't know
3  that.   I mean, I am not here -- I'm here due to the fact that I
4  have a right to make and enforce contracts regardless of I'm at
5  will or not, especially if you are intentionally discriminating
6  toward me because of my race regardless.   That's the facts of
7  it all.

8        He's saying that I didn't produce any facts.   I'm
9  telling you what the facts are.   You used IHG or Holiday Inn --
10 the trademarks policies to fire me, okay?   Mr. Lobach's actions
11 were not in concert with the standards in that employee
12 handbook because he is an employee as well so if that's the
13 case, he should have been terminated as well.

14       He is not even the general manager at this hotel
15 anymore and I'm pretty sure it goes beyond just this lawsuit
16 filed by myself.

17       I should -- you could even look into the records or
18 we could have just watched a film -- they have cameras there --
19 we could have watched a film and see where I was and where Mr.
20 Lobach was and when the time he fired me and how he came in my
21 face yelling and screaming at me when he's telling me that I
22 need to leave out of the hotel.

23       So I was doing that, yet and still I asked him why am
24 I being punished for doing something that you told me to do in
25 the first instance, and that's the problem.   If I do something

1  wrong, then I pay the consequences.  If someone do something
2  wrong to me, I guarantee you, you're going to pay the
3  consequences one way or the other.

4          If it's not -- if I don't get justice here, I'm going
5  to get justice somewhere else, either not in this Court but
6  maybe in another Court.  The facts remains that I can request
7  for this Court to subpoena the individuals who would come here
8  and testify.

9          I don't need to have a affidavit -- an affidavit is
10  just what they're going to say when they come here so that you
11  wouldn't be surprised.  That's all that is.  If I can produce
12  an individual to come down here, I have a right to a trial by
13  jury regardless.

14          The amount is over $20 under the Seventh Amendment so
15  I have a right to a trial by jury regardless.  So if this Court
16  believe that I don't have a case here, then so be it, but we'll
17  just go onto the next Court.

18          THE COURT:  Anything else?

19          MR. GARY:  I'm -- I'm a pro se litigant.

20          THE COURT:  Anything else?

21          MR. GARY:  No.  No, Your Honor, no, I have no -- no
22  other points to make upon Mr. Lees stating that Mr. Lobach
23  acted in good faith because he did not act in good faith and he
24  on more than one occasion as per the documentation that I gave
25  you at the beginning of this hearing, I have a list of 20

 1    individuals whom I can call or the Court can subpoena to

 2    testify and or appear before the Court.  Like I said, I

 3    shouldn't even be here.

 4           I'm stressed out enough due to the fact that I can't

 5    even take care of my children because I can't even hold a job

 6    which I'm qualified to do just because of the color of my skin

 7    because of some irate customer and a racist general manager.

 8           THE COURT:  I asked before and you said you had

 9    nothing else but I'll give you an opportunity again.  Anything

10    else?

11           MR. GARY:  Yes, Your Honor.  The individuals that's

12    named in  this suit here is -- the purpose of that is to show

13    that Mr. Lobach created a hostile work environment which -- or

14    a racially discriminated one where he used terms that was

15    derogatory and negative towards individuals and allowed

16    individuals to be treated other than as equal members of

17    society.

18           THE COURT:  There was no hostile work environment

19    claim filed in this case, correct, Attorney Lees and Attorney

20    Floyd?

21           MR. LEES:  That is correct, Your Honor.  It's an

22    adverse employment action involving the termination only, Your

23    Honor.

24           MR. FLOYD:  That's right, Your Honor.

25           MR. GARY:  Well, do I need to -- to move to amend it,

1    Your Honor?  To add it?  If that's the case --

2           THE COURT:  You've already been given an opportunity

3    to amend and your request to amend is denied at this stage of

4    the game.

5           Anything else?

6           MR. GARY:  So I can't ask for an injunctive relief?

7           THE COURT:  You cannot amend, no.  The request to

8    amend the complaint on the two grounds that you proffered is

9    denied.

10          MR. GARY:  Okay.

11          THE COURT:  Do you have anything else?

12          MR. GARY:  No, Your Honor, I'm done.

13          THE COURT:  Very well.  This is what I intend to do.

14   I'm going to take a five minute break and then I will be back

15   to announce my decision on the pending motions for summary

16   judgment, so in five minutes I shall return to tell you on the

17   record my decision disposing of each of these motions and we

18   will see where we are at the conclusion of my ruling on the

19   four motions pending before me.

20          This case is listed for trial September 10th.  That's

21   next week, correct?

22          MR. LEES:  That's right, Your Honor.

23          MR. FLOYD:  That's correct.

24          MR. LEES:  It's in the trial pool.

25          THE COURT:  Did I see any other request to points for

1   charge or anything along those lines filed in this case?

2          MR. GARY:  No.

3          THE COURT:  I don't think there was any.

4          MR. LEES:  No, no --

5          MR. FLOYD:  No, that's right.

6          THE COURT:  Okay.  I'll talk to you after that about

7   those things in a few minutes as to whether they're necessary

8   to have.  Thank you.

9          But before I do that, let me give you, Mr. Lees, an

10  opportunity to respond to rebuttal because I think the more I

11  hear Mr. Gary, the more he throws out terms that have not been

12  claimed in this complaint such as hostile work environment and

13  some of the statements that he has made which I think I'm

14  hearing for the first time based on the pleadings.  But in any

15  event, do you have any rebuttal?

16         MR. LEES:  Your Honor, the only thing that I would

17  address is that Mr. Gary appears to be arguing that because

18  there were these isolated incidents that had occurred during

19  his one year of employment to other employees, that he's using

20  those as a means of supporting his subjective belief that

21  perhaps his race was the motivation behind Mr. Lobach

22  terminating him and not his admitted knowing violation of

23  company policy and hotel policy regarding cursing in front of

24  hotel guests and fighting with his general manager in the

25  presence of hotel guests.

1         And there's simply nothing that he's come forward

2 with that support his burden that the preferred reason for his

3 termination was protectual, and on that basis, I would ask that

4 summary judgment be granted.

5         THE COURT:  Thank you very much.

6         MR. LEES:  Thank you, Your Honor.

7         THE COURT:  Five minute break and then we will resume

8 in five minutes.

9         THE CLERK:  All Rise.

10         THE COURT:  Thank you.

11         (Off the record, 3:05 p.m. to 3:15 p.m.)

12         THE COURT:  Okay, you may be seated.

13         Very well, we are back on the record in the matter of

14 Robert Gary versus Guari Nandan, et al, Civil Action Number

15 10-2082.  Pending before this Court are the defendant's motion

16 for summary judgment; plaintiff's cross-motion for summary

17 judgment; and defendant's motion for sanctions, particularly

18 defendant Intercontinental Hotels Group, herein after IHG,

19 motion for summary judgment on document 41; defendant's Guari

20 Nandan, LP and Richard Lobach's motion for summary judgment at

21 document 42; plaintiff Guari Nandan's cross-motion -- strike

22 that -- plaintiff Gary's motion for summary judgment against

23 defendants Nandan and Lobach, document 44; and defendant IHG's

24 motion for sanctions, document 46.

25         Gary, a former employee of Holiday Inn in Allentown,

1  Pennsylvania brings claims against Nandan, his former employer,

2  former Holiday Inn General Manager Richard Lobach, and

3  Intercontinental Hotels Group pursuant to Title VII of the

4  Civil Rights Act of 1964, and Titles 42 USC Section 1981,

5  Section 1983, 1985(3) and 1986.

6       Essentially Gary's claims arise out of the

7  termination of his employment in March of 2009 which Gary

8  contends was in retaliation for his complaints about racial

9  discrimination to which he was subjected at the Holiday Inn.

10      More specifically, Gary brings the following counts

11  against all defendants -- Count 1 is a claim under Title 42

12  Section 1981; Count 2, a claim under Title 42 Section 1983;

13  Count 3, a claim under Title 42 Section 1985(3); Count 4, a

14  claim under Title 42 Section 1986; Count 5, a claim under Title

15  42 Sections 2000e-5 which is Title VII; Count 6, Title 42

16  Sections 2000e through 2 or 2000e through T3 (sic), which is

17  also entitled (inaudible)  claim; and Count 7, a claim under 42

18  Section 1981(c).

19      This Court previously dismissed Count 2, 3, 4, and 5

20  against Nandan and Lobach, as well as Counts 5 and 6 against

21  Lobach in his individual capacity, therefore remaining are the

22  following claims -- the claims against Nandan are Counts 1, 5,

23  and 6; the claims against Lobach are Counts 1, 5 and 6 in his

24  official capacity only; and all of the claims against IHG.

25      So let me first address the International Hotels

1 Group motion for summary judgment.  IHG asked this Court to

2 dismiss all claims against them.  IHG asserts basically that it

3 was not Gary's employer, and that it had no control over any of

4 the decisions regarding Gary's employment.

5        In addition, IHG was not involved in any of Gary's

6 hiring or firing in any way, and in any conduct giving rise to

7 Gary's claims.  The undisputed evidence establishes that IHG

8 had no connection whatsoever to the ownership and manager and

9 structure of the hotel at issue in this case.

10        IHG is an international group of companies that

11 franchises several hotel brands.  Holiday Hospitality

12 Franchising Inc, herein after HHFI, is one of the many

13 companies that comprised IHG.

14        It is a separate and distinct entity from IHG, IA --

15 strike that -- HHFI is responsible for maintaining the brand's

16 standards of IHG's hotels including the Holiday Inn brand,

17 which is the hotel where Gary worked.

18        HHFL issued a licence agreement to the co-owners of

19 the hotel at issue in here and I'm going to spell their names

20 -- Ramesh Majethia, and Vinai Barchwal, R-A-M-E-S-H, the last

21 name is spelled M-A-J-E-T-H-I-A.  The second name is Vinai

22 Barchwal, and that would be spelled V-I-N-A-I, the last name is

23 spelled B-A-R-C-H-W-A-L, co-owners that run the hotel in

24 Allentown.

25        IHG is not a party to this licencing agreement.  IHG

1   does not have any ownership interest or financial over the

2   hotel and does not receive any money from the hotel.  The

3   undisputed evidence in this case further establishes that

4   Majethia and Barchwal are co-owners of Guari Nandan in

5   Allentown, an LLC, the general partner of defendant Guari

6   Nandan, LP, which owns and operates the hotel at issue here

7   under the licencing agreement with HHFL.

8           It is undisputed that defendant Richard Lobach was

9   employed as the general manager of the hotel and since IHG does

10  not own or operate a hotel, IHG cannot be and it is not the

11  employer of the individual working -- the individuals working

12  at the Allentown Holiday Inn owned by Guari Nandan, LLP.

13          The evidence also establishes that IHG has no

14  involvement in plaintiff Gary's employment or have any control

15  over the daily operations of the hotel management activities at

16  the hotel in Allentown.

17          Counts 1, 5 and 6 are dismissed against IHG because

18  Gary failed to establish IHG was somehow involved to be

19  connected to the alleged conduct giving rise to his claims.  In

20  fact, at his deposition he admitted IHG has never been involved

21  in any aspect of his employment.

22          Furthermore, Count 2, 3, 4 and 7 are being dismissed

23  against IHG for the same reasons this Court dismissed those

24  claims against Lobach and Guari Nandan, LP.

25          Let me now turn to the motion for summary judgment

filed by Nandan, LP and Lobach.  In their motion, Nandan and

Lobach have asked me to dismiss the remaining claims against

them.  Nandan and Lobach assert Gary has failed to present

facts establishing a race discrimination claim under Title VII

in this case.

Gary has failed to demonstrate that he was discharged

under circumstances that give rise to an inference of unlawful

discrimination.  The undisputed evidence established that he

was fired for insubordination and cursing at a hotel guest.

Gary failed to present any credible, competent

evidence to establish that the proffered reasons for the

employer for terminating his employment on March 14th of 2009

were not legitimate non-discriminatory reasons.

Furthermore, he has failed to establish retaliation.

I'm going to point to the following facts.  There's a memo

attached to I believe the plaintiff's moving papers at document

44 -- a letter to Robert Gary that is in the employment file

prepared by Richard C. Lobach, Jr. dated March 25th, 2009

regarding his termination and basically states that based on

Mr. Robert's action of fighting with the guest, "His resistance

to accept my offer to go home with pay to cool off, the

continued use of vulgar language in the lobby area, I was

forced to terminate him based on the employee handbook --

Critical Offenses on page 25."

The critical offenses outlines on page 25 are number

1  one, use of profanity or other offensive language in the
2  presence of, personal or by telephone, of a guest. That is a
3  critical offense, item number seven, serious unethical conduct
4  as determined by the company; 13, conduct detrimental to the
5  company operations that result in the negative public relations
6  or guest services; and number 15, fighting -- all the acts of
7  aggression on hotel premises.

8        In this case, the plaintiff in the deposition makes
9  some critical admissions that I think are worthwhile repeating
10  on the record. When questioned regarding the exchange or
11  exactly what happened and what he did during the confrontation
12  with the airline pilot, and I point to the deposition testimony
13  where he's asked, "What did you say in response to the pilot
14  saying that to you?"

15        "After I first -- I didn't even hear him, I wasn't
16  even paying him any mind until Shawn pointed it out to me. He
17  said did you hear what he said?"

18        "I said what he -- what the heck did he say?"

19        "He said fuck you and he says -- so he says fuck you
20  so I told him to fuck you," so he makes the admission that he
21  used the profanity on the deposition that was taken back on
22  July 25th of 2012.

23        He further goes on to make an admission regarding the
24  fact that he understood the policy and the handbook and what
25  was required of him when he was questioned -- and I'm looking

1  at the deposition, page 25 of 40, particularly page 94 and 95

2  (sic), a series of questions or responses to questions in which

3  he responds, "I didn't even know that he cursed at me until

4  Shawn pointed it out."

5       "And then in response, you looked at the pilot and

6  you said the F word, you then said yes, exactly."

7       He admitted that he did that.  He was asked, "Did you

8  think it was appropriate for an employee to lose his temper

9  with a hotel guest and to curse at the guest?"

10      Mr. Gary's response, "I don't think it's appropriate.

11  I know it's in the handbook and I am supposed to be -- not

12  supposed to be cursing, but you still -- the guest is not

13  supposed to be cursing at me as well."

14      So in essence, he made an admission regarding the use

15  of profanity against a guest which under the terms of the

16  handbook is sufficient reason in and of itself to terminate his

17  employment because that is a critical offense.

18      Finally, Gary's 1981 claim is hereby dismissed as a

19  matter of law for the same reasons his Title VII claims have

20  been dismissed.  Section 1981 are analyzed under the same frame

21  work as Title VII claims.

22      Accordingly, Section 1981 employment claims that he

23  makes are hereby dismissed for all of the same reasons as

24  Gary's Title VII claims were dismissed.

25      Next I turn to Gary's cross-motion for summary

1   judgment against Nandan, LP and Mr. Lobach.  In his

2   cross-motion he asserts he was fired back on March 14th of 2009

3   for racial reasons, however, he admits to arguing and cursing

4   at a hotel guest as I just indicated based on his deposition

5   that is a matter of record on the date in question in violation

6   of the hotel's employee handbook.

7           He submitted his own self-serving affidavit in

8   support of his argument and he alleges further that he was

9   fired because of his race because he once heard from a

10  co-worker that General Manager Lobach used the word "N" to

11  describe a black man when speaking to an African American

12  co-worker.

13          He also argued based on that information that it can

14  be inferred that his own termination was racially motivated.

15  As I said earlier, Gary has not demonstrated that he was fired

16  under circumstances that give rise to an inference of unlawful

17  discrimination.

18          The undisputed evidence established is that he was

19  fired on March 14th, 2009 for insubordination and cursing at a

20  hotel curse, not because of his race.  There is no competent

21  admissible evidence that he has produced to rebut the proffered

22  reasons for terminating him back on March 14th of 2009.

23          The employer has proffered a legitimate

24  non-discriminatory reason which he has not rebutted.

25  Accordingly, Gary's cross-motion for summary judgment is

1  denied, independently of having granted the motion for summary
2  judgment filed by IHG, I also will grant the defendant's motion
3  for sanctions in this case based on failure to comply with
4  discovery after having been properly issued a request for
5  discovery despite the fact that many times defense counsel
6  wrote letters asking for him to respond, and that even at the
7  deposition which has been rescheduled I believe twice, defense
8  counsel gave him an option as to how to handle the responses to
9  the discovery requests.

10        Even then, the defendant did not comply and for those
11 reasons, separate and apart from the merits of the claim, I
12 think that an appropriate sanction in this case would be to
13 dismiss the claims against IHG with prejudice.  I think it will
14 now be sufficient and it will be a tremendous waste of time to
15 dismiss or to prevent him from putting on any evidence against
16 IHG at trial.

17        I think that the appropriate remedy for violation of
18 the discovery order in this case is for this Court to dismiss
19 his claims with prejudice on that ground alone, so as far as
20 the record is concerned, there are two separate grounds for
21 which I will grant the motion to dismiss all of the claims
22 against IHG.

23        One is on the merits, and secondly as a sanction for
24 failure to comply with the discovery order and the discovery
25 request that defense counsel filed in this case.  Accordingly,

Ruling of the Court                       55

1  because I have granted the defendant's motion for summary

2  judgment, there is no need to prepare for trial in this case

3  and there is no need to engage in any further discussion

4  regarding any of the items that are normally the subject of a

5  final pretrial conference.

6          And, I will prepare an order reflecting my ruling and

7  incorporating by reference my discussion on the record as to

8  the reasons for my granting the defendant's separate motions

9  for summary judgment at document 41 and at document 42.

10         Anything else?

11         MR. FLOYD:  No, Your Honor, not from defendant IHG.

12         THE COURT:  Anything else, Mr. Gary?

13     (Pause)

14         MR. GARY:  (No response).

15         THE COURT:  Very well.  Is there anything else I

16  should add to the record that I have omitted or failed to

17  address?

18         MR. LEES:  No, Your Honor.

19         MR. FLOYD:  Your Honor, the only other issue in our

20  motion for sanctions was that we had asked for costs and --

21         THE COURT:  What is the cost?

22         MR. FLOYD:  Well, we would have submitted later an

23  affidavit as to cost if the Court so pleases.

24         THE COURT:  Very well.  Very well, why don't you

25  submit an affidavit as to cost and I will reserve ruling on

1  that issue as to whether -- I already granted the sanctions but

2  I will reserve and rule as to whether to award your costs or

3  not --

4          MR. FLOYD:  Thank you, Your Honor.

5          THE COURT:  -- but you could submit it.  Do you have

6  a sense of what?

7          MR. FLOYD:  I really don't, and we asked for costs in

8  the motion for sanctions but I thought that if I --

9          THE COURT:  That's why I asked you whether you were

10  pursuing that.

11         MR. FLOYD:  Yes, I understand, Your Honor, and at the

12  time, I didn't think and didn't ask for it at the time but I'd

13  just renew the request and we would be happy to submit an

14  affidavit for cost to the Court on the Court's --

15         THE COURT:  Well, you can submit it.  That doesn't

16  mean you're going to get it.

17         MR. FLOYD:  I understand.

18         THE COURT:  Okay, okay.  Thank you very much.

19         MR. FLOYD:  Thank you, Your Honor.

20         MR. LEES:  Thank you, Your Honor.

21         (Matter concluded, 3:33 p.m.)

                              * * *

22

23

24

25

1            **C E R T I F I C A T I O N**

2

3            I, Diane Gallagher, court approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8

9    _____            _____

10   DIANE GALLAGHER                    DATE

11   DIANA DOMAN TRANSCRIBING

12

13

14

15

16

17

18

19

20

21

22

23

24

25