IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT L. GARY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 10-2082 |
| | : | |
| GAURI NANDAN | : | |
| *d/b/a HOLIDAY INN CENTER CITY* | : | |
| *ALLENTOWN*, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                          **October 5, 2012**

In this action, Plaintiff Robert L. Gary, a former employee of a Holiday Inn in Allentown,

Pennsylvania, brings claims against Defendants Gauri Nandan, L.P. (Nandan), his former employer;

Richard Lobach, the former Holiday Inn general manager; and Intercontinental Hotels Group (IHG)

pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 1981, 1983, 1985(3), and

1986. Gary's claims arise out of the termination of his employment in March 2009, which Gary

contends was in retaliation for his complaints about racial discrimination to which he was subjected

at the Holiday Inn.

This Court previously dismissed some of Gary's claims brought against Nandan and Lobach.

*See* Sept. 30, 2011, Order, ECF No. 29; Dec. 9, 2011, Order, ECF No. 31. Thereafter, Nandan,

Lobach, and IHG filed motions for summary judgment as to all remaining claims against them. On

September 4, 2012, this Court heard argument on Defendants' summary judgment motions, and other

pending motions. At the argument, the Court granted Defendants' summary judgment motions,

explaining the basis for the decision on the record. Subsequently, the Court entered an Order

granting those motions and entering judgment in favor of Defendants and against Gary for the

reasons stated on the record. *See* Sept. 5, 2012, Order, ECF No. 51. The Court incorporates a copy

of the official transcript of the September 4 proceeding (attached hereto as Exhibit "A") to this Memorandum.

Accordingly, and as set forth in this Court's September 5, 2012, Order, IHG's motion for summary judgment is granted; judgment is entered in favor of IHG and against Gary on all counts of Gary's Amended Complaint.  Nandan and Lobach's motion for summary judgment is granted; judgment is entered in favor of Nandan and Lobach and against Gary on Counts I, V, and VI of Gary's Amended Complaint. In addition, Gary's cross-motion for summary judgment is denied, and Gary's oral motion to amend his amended complaint is also denied.  Lastly, IHG's motion for sanctions is granted insofar as all claims are dismissed against IHG.

BY THE COURT:

Juan R. Sánchez, J.

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT L. GARY, | ) | 10-CV-2082 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| GUARI NANDAN, et al, | ) | Philadelphia, PA |
| | ) | September 4, 2012 |
| Defendants. | ) | 1:59 p.m. |

TRANSCRIPT OF PRETRIAL CONFERENCE
BEFORE THE HONORABLE JUAN R. SANCHEZ
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          ROBERT L. GARY, PRO SE
                            P.O. BOX 56
                            Hellertown, PA   18055


For the Defendants          PAUL G. LEES, ESQUIRE
Gouri Nandan and            MARSHALL, DENNEHEY, WARNER, COLEMAN
Richard Lobach:             & GOGGIN
                            1495 Valley Center Parkway
                            Suite 350
                            Bethlehem, PA   18017

For the Defendant           ROBERT P. FLOYD, III, ESQUIRE
Intercontinental            CONSTANGY, BROOKS & SMITH LLP
Hotel Groups:               4100 Monument Corner Drive
                            Suite 520
                            Fairfax, VA   22030



Audio Operator:             PATRICK KELLY



Transcribed by:             DIANA DOMAN TRANSCRIBING
                            P.O. Box 129
                            Gibbsboro, New Jersey   08026
                            Office:  (856) 435-7172
                            Fax:     (856) 435-7124
                            E-mail:   dianadoman@comcast.net



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

## I N D E X

ARGUMENTS:                                                  PAGE

Reference:  IHG's motion for summary judgment

  By Mr. Floyd                                            5, 15

  By Mr. Gary                                             7, 18

Reference:  IHG's motion for sanctions

  By Mr. Floyd                                            19, 24

  By Mr. Gary                                             21

Reference:  Nandan & Lobach's motion for summary judgment

By Mr. Lees                                                28, 45

By Mr. Gary                                                35


FINDINGS OF THE COURT:                                      PAGE

  By Judge Sanchez


RULING OF THE COURT:                                        PAGE

Reference:  IHG's motion for summary judgment

  By Judge Sanchez                                        49

Reference:  Nandan and Lobach's motion for

          summary judgment

  By Judge Sanchez                                        50

Reference:  Gary's motion for summary judgment

  By Judge Sanchez                                        53

Reference:  Motion for sanctions

  By Judge Sanchez                                        54

1        (The following was heard in open court at 1:59 p.m.)

2        THE COURT:   You may be seated.   Thank you very much.

3   This is the matter of Robert L. Gary versus defendant Guari

4   Nandan, doing business as Holiday Inn Center City Allentown,

5   and defendant International Hotels Group (sic), IHG, defendant

6   Richard Lobach -- as well as defendant Richard Lobach.   I

7   believe we have Attorney Lees, Attorney Floyd, and we have Mr.

8   Gary, correct?

9        MR. GARY:   Correct.

10        MR. LEES:   Correct, Your Honor.

11        MR. FLOYD:   Correct, Your Honor.

12        THE COURT:   This is a final pretrial conference.

13   This case is listed for trial I believe in the trial pool for

14   September 10th, and I noted that there were a number of pending

15   motions.

16        I think we have document 41, a motion for summary

17   judgment filed by Intercontinental Hotel Group; document 42,

18   which is a motion for summary judgment filed by Richard C.

19   Lobach and Guari Nandan; document 44, a pending motion for

20   summary judgment filed by Robert Gary; and we have a motion for

21   sanctions filed by Intercontinental Hotel Group.

22        So my goal today is to listen to argument on these

23   motions and then hopefully be in a position where I could

24   decide them immediately.   So let me give Attorney Floyd an

25   opportunity to argue on behalf of the corporation.

1            MR. FLOYD: Your Honor, should I take the podium or

2    should I --

3            THE COURT: However you feel comfortable it's fine.

4            MR. GARY: Your Honor -- excuse me, before we go any

5    further, I have something that I wish to hand to you. Can I

6    approach?

7            THE COURT: What is it? Did you file it?

8            MR. GARY: Yes.

9            THE COURT: And what is it?

10           MR. GARY: I'm just handing you a courtesy copy so

11   that you have it.

12           THE COURT: Okay, you can give it to me. Have you

13   given it to counsel to look at?

14            MR. GARY: Yes.

15       (Pause)

16           THE COURT: Okay, that's your pretrial memo. Very

17   well. Thank you very much.

18           MR. FLOYD: Good afternoon, Your Honor.

19           THE COURT: Good afternoon.

20           MR. FLOYD: IHG has two motions pending, and I'll

21   take the --

22           THE COURT: Right, one for sanctions and one a motion

23   for summary judgment, if I understand it correctly?

24           MR. FLOYD: Yes, Your Honor, and I'll handle either

25   one that you'd like me to first.

1          THE COURT:  Yes, why don't we handle the -- why don't

2  we first address the motion for summary judgment, since I

3  understand that your position is that the International Group,

4  you have a number of companies who belong to the International

5  Group and the Holiday -- doing business as Holiday under Guari

6  Nandan Group here, which is owned by I think two co-owners, had

7  a licencing agreement with one of the companies that works

8  under you -- is under you -- and it was basically under the

9  licencing agreement, an agreement to just use the trade name --

10         MR. FLOYD:  That's correct, Your Honor.

11         THE COURT:  -- and that you had an agreement that

12 outlines what they have to do to meet the accreditation or to

13 meet the specifications for the use of that training, that your

14 position is that you in no way, shape or form are a party to

15 the agreement, you have no ownership interest in the business

16 or are any agent of -- of the groups of the business, not the

17 employer and not the supervisor, and had nothing to do with the

18 employment decision in this case.

19         That's what I understand from your motion in a

20 nutshell.  Am I right?

21         MR. FLOYD:  That's right, and I don't think I could

22 have argued it better.

23         THE COURT:  Right.  Now --

24         MR. FLOYD:  And I don't know what I -- I'm sorry, go

25 ahead.

1          THE COURT:  Well, my question is -- and I think

2    you've provided some declarations of some affidavits to support

3    your position?

4          MR. FLOYD:  That's correct.  We've provided an

5    affidavit from one of the representatives for the defendant

6    corporation IHG, and we provided affidavits from the two

7    partners of the partnership interest that owns the hotel.

8          THE COURT:  Right.

9          MR. FLOYD:  Those affidavits are consistent in

10   representing that there is no relationship between the

11   defendant -- the corporate defendant IHG and the hotel with

12   regard to anything to do with Mr. Gary's employment.

13         THE COURT:  All right.  Now if I understand it

14   correctly, Mr. Gary has not produced any evidence to dispute

15   that claim.

16         MR. FLOYD:  That's correct, Your Honor, despite

17   efforts on our part, patience on our part, and finally

18   obviously we've had to resort to asking the Court to intervene,

19   so they've provided -- Mr. Gary's provided no support at all to

20   support his contention that there is some type of relationship

21   that would entitle him to claim some type of liability on

22   behalf of IHG.

23         THE COURT:  Okay.  Thank you very much.  Let me get

24   his response and then we'll argue -- you will argue the motion

25   for sanctions.

1          Mr. Gary, you pretty much I think understand the

2    pleadings and you heard my question posed to counsel -- the

3    summary I made to counsel based on the pleadings, so my

4    question to you is what evidence -- record evidence or evidence

5    you have that supports your contention that IHG is somehow

6    connected, related to or involved in the employment decision

7    that was made here?

8          MR. GARY:  Well, Your Honor, to be frank, IHG

9    approved by that agreement -- the licencing agreement of Mr.

10   Lobach, the General Manager.  In the document, it states that

11   they are to approve the manager.

12         So if they approved the manager, he was acting under

13   the policies of the trademark name Holiday Inn, not Guari

14   Nandan doing business as Holiday Inn.

15         THE COURT:  Where?  Could you point that out to me in

16   the agreement?

17         (Pause)

18         THE COURT:  And where did you -- well, I guess that's

19   the document that they produced to you?

20         MR. GARY:  Yeah.  They produced -- this is the

21   document that he had sent me, then he sent the rest of it, and

22   that was the reason why the Court wasn't given any response to

23   it, because I had to fight with this individual to get these

24   documentations.  He didn't send them to me of his own free

25   will --

Gary - Argument                                              8

1          THE COURT:  Well --

2          MR. GARY:  -- at first --

3          THE COURT:  Tell me what you're reading --

4          MR. GARY:  -- but that's beside the point.

5          THE COURT:  Well, tell me where you're reading in

6     this licencing agreement which is between -- be mindful of the

7     fact that this licencing agreement is not between IHG and the

8     defendant owners here, Lobach and Nandan.

9          This licencing agreement is between one of the

10    companies that is part of the group of IHG and the defendant

11    Guari Nandan.  Where are you reading?  You do understand that

12    this is a licencing agreement between Holiday Hospitality

13    Franchising, Incorporated and the Holiday Inn Hotel I believe

14    is the Gary Nandan, LLC?  Do you understand that?

15         MR. GARY:  Well, Your Honor, what I --

16         THE COURT:  Tell me why do you believe -- and what do

17    you think, and point to me where you think that this supports

18    your claim that somehow IHG is the employer or is responsible

19    or liable to be liable for the employment decision that was

20    made in this case.

21         MR. GARY:  IHG, or whomever they're going as, Holiday

22    -- Holiday Hospitality --

23         THE COURT:  These are independent, separate

24    companies.

25         MR. GARY:  I understand that, they're supposed to be

1  independent, but yet and still this agreement here states the

2  individuals' names --

3            THE COURT:  Where --

4            MR. GARY:  -- whom are acting as Guari Nandan --

5            THE COURT:  Tell me, where are you?  What page?

6            MR. GARY:  I'm on the first page of this --

7            THE COURT:  Okay.

8            MR. GARY:  -- of the licencing agreement.

9            THE COURT:  Okay, okay, I see.

10            MR. GARY:  And these are the individuals who are

11  Guari Nandan -- Rasheed (sic) -- however you pronounce his last

12  name and Vinai are the two -- are Guari Nandan acting as Mr. --

13  or Guari Nandan, that's the company name.

14            THE COURT:  Yes, they're the owners --

15            MR. GARY:  Okay.

16            THE COURT:  -- they're the co-owners of Guari Nandan,

17  Inc.

18            MR. GARY:  This agreement is for 904 West Hamilton

19  Street, is where I was employed at through -- by Holiday Inn or

20  Mr. Nandan doing business as Holiday Inn.

21            THE COURT:  Okay.

22            MR. GARY:  Like I stated earlier, these -- this

23  agreement states that the corporation and or -- yeah, what am I

24  saying -- the corporation -- the corporation has to approve the

25  manager.

1           THE COURT:  Where?  Where are you reading that?  Give

2   me the page and number and paragraph.

3           MR. GARY:  And if that's the case and if he's -- if

4   he's acting under the -- under these individuals, then he is

5   held responsible or vicariously responsible for any actions

6   that the general manager has done due to the fact that the

7   corporation approved it.

8           THE COURT:  Tell me where you're reading that.  Point

9   me to the provision in the agreement.

10          MR. GARY:  One second, please.

11      (Pause)

12          MR. GARY:  Page 29, Your Honor.

13          THE COURT:  D?  Paragraph D, Management Designation?

14          MR. GARY:  Yes.

15          THE COURT:  Tell me where -- you're making the

16  argument based on the fact that the hotel at all times must be

17  operated by an acceptable general manager, and it goes on to

18  basically say that the licensor, which in this case will be

19  HHFL, must have -- "cannot have any objections to any proposed

20  general manager and that any contract with respect to the

21  operations of the hotel and such general policies and

22  procedures must comply with the licensor's brand standards."

23  This is limited.

24          MR. GARY:  I understand that.

25          THE COURT:  They are enforcing the name brand.  The

1 brand Holiday Inn is a brand. They are -- the licence allows

2 Guari Nandan, if I understand it correctly, to operate a hotel

3 so long as it is consistent with the brand -- the brand.

4 MR. GARY: The brand standards.

5 THE COURT: Right.

6 MR. GARY: Correct.

7 THE COURT: So where do you see here that this gives

8 or makes IHG, or even HHFL, liable for the employment decision?

9 MR. GARY: Let me redirect this, Your Honor. IHG is

10 responsible for -- well, not responsible -- they approved the

11 general manager.

12 THE COURT: And so what?

13 MR. GARY: They're acting under the policies of -- as

14 the --

15 THE COURT: It's not a question of approve. They are

16 consistent with their obligation to protect the brand, if I

17 understand it correctly, notwithstanding paragraph 10-J of this

18 licencing agreement.

19 What they are basically saying here is that the hotel

20 should at all times be operated by an acceptable manager to

21 protect their standards. They're not -- or not suggesting in

22 any way, shape or form that they have to approve the general

23 manager. Where do you see that?

24 MR. GARY: No. I have read that, that they -- they

25 stated in here that they approve the general manager and they

1  can't -- they have stipulations on Mr. Barchwal and Mejethia,

2  or however you pronounce their names, those individuals and or

3  Six Continental Hotel Group, just like I said.  That's why the

4  argument is they all have the same address and like you said,

5  they're a whole bunch of collective individuals.

6        That way they can avoid liability by saying oh, it's

7  this, it's that, it's this, it's that -- the whole point is

8  they were acting under the Holiday Inn Associates Book --

9  that's from Holiday Inn itself.  He said that he fired me due

10  to the fact that from the policy that's in Holiday Inn's

11  handbook.

12        If that's the case, who made the handbook ?  IHG?

13  The corporation?  So if that's the case, the policies and or

14  customs that were handed down or the action that was taken by

15  the general manager during the course of his employment, he

16  stated that he fired me -- in his affidavit -- because of what

17  was said in the employee handbook.

18        So if the employee curses, which I'm -- what I'm

19  supposed to had to got fired for (sic) -- at anyone, that I am

20  supposed to be terminated immediately.  But yet and still the

21  defendant cursed at me first.  Nothing happened to him.

22        I mean, I don't seem to understand why is it that the

23  employer can tell the employee you cannot curse, but I can

24  curse at you and you are just to get over it, and or fire me

25  for having no legitimate business purpose of firing me in the

1  first place.  That's what needs to be proved here, not the mere

2  fact that -- it does not matter.  They approved the actions,

3  they approved Mr. Lobach to be a general manager at 904 West

4  Hamilton Street, and this agreement shows that.

5          So regardless, if Mr. Lobach was acting under these

6  policies, then they are vicariously liable under respondeat

7  superior since he is acting under their rules and regulations.

8          THE COURT:  Okay.  Is that the only thing you can

9  point out -- point to to support your argument that IHG and I

10  believe the other company -- HHFL are liable for the employment

11  decision that was made back on I believe February 18th, 2008?

12          MR. GARY:  February 18th, 2008 -- you mean March?

13  You mean hiring me?  That's February 18th.

14          THE COURT:  The employment -- the employment decision

15  that was made.

16          MR. GARY:  The adverse decision of firing me?

17          THE COURT:  Yes.

18          MR. GARY:  Was March 14th.

19          THE COURT:  With regard to that decision, do you have

20  March 14th?

21          MR. GARY:  Again, Your Honor, I --

22          THE COURT:  Of 2009.

23          MR. GARY:  -- restate, the general manager was

24  acting --

25          THE COURT:  Listen to my question.  My question is is

 1   that the only record evidence that you're relying on to support

 2   your argument that these corporations are liable for the

 3   employment decision that was made back on March 14th of 2009?

 4   Is that the only record evidence that you have to support your

 5   contention or your argument?

 6              MR. GARY:  Yes.  Yes.

 7              THE COURT:  So you're relying strictly on the

 8   licencing agreement -- I believe it will be page 29, paragraph

 9   D, right?

10              MR. GARY:  Well, Your Honor, there are -- like in

11   here it says that they are selling a system, okay? Mr. Lobach

12   was acting under the system.  I was in the system due to the

13   fact that hey, if I do something wrong, then whatever the

14   policy is, the discipline stage is from this -- from the

15   corporation, from Holiday Inn, the trade name Holiday Inn, so

16   if Mr. Lobach is a general manager of Holiday Inn and he's

17   acting under the policies of this agreement and or they

18   approved his actions, then yes, they are held under respondeat

19   superior vicariously liable for anything that he does that's

20   against State and Federal law.

21              THE COURT:  Do you have any other argument to make in

22   support of your claim that these corporate entities are liable

23   for the employment decision terminating your job back on March

24   14th of 2009?

25              MR. GARY:  As partners with Guari Nandan --

1           THE COURT:  No, no --

2           MR. GARY:  -- doing business as Holiday Inn, yes.

3           THE COURT:  -- this is not --

4           MR. GARY:  It's a partnership, Your Honor.

5           THE COURT:  Okay, this is the motion of the corporate

6    entities.  Do you have any other argument in support of your

7    claim that they are liable to you for the employment decision

8    that was made back on March 14th of 2009?

9           MR. GARY:  No, that's it.

10          THE COURT:  Okay.

11          Counsel, would you respond?  I think this is a

12   licencing agreement, but would you explain because Provisions

13   -- he's reading Provisions -- I think when you read Provisions,

14   page 19, J, Management of the Hotel and you read page 29,

15   paragraph D, Management Designation, he's reading into it that

16   the fact that you approved the general manager makes you the

17   employer, I suppose.

18          MR. FLOYD:  I've heard the argument, Your Honor, and

19   he is assuming a lot of facts that aren't in the record and

20   that don't exist in order to jump to that conclusion, and

21   indeed, even if there was some -- some ability for the

22   corporation to approve of a manager that was selected by the

23   partnership, that would be the extent of it.

24          There's no other involvement whatsoever with the

25   manager's decisions with regard to the day to day running of

1   the hotel.  And indeed, if you turn to page 23 of the same

2   agreement, there's explicit language outlining that there is no

3   agency relationship between the parties, and it points out not

4   only agency, but fiduciary employment relationship or any other

5   type of relationship.

6           In addition to that, Mr. Gary's arguing that -- and

7   again, we wouldn't concede that these policies that he's

8   talking about were policies of the defendant corporation, but

9   he's not arguing that the policies were a problem, he was

10  arguing that the individual who was acting under the policies,

11  you know, did something improper to him, not that the policies

12  themselves were -- were somehow at fault or somehow related to

13  his termination.

14          THE COURT:  Yes, but I think he's telling me he's

15  pointing to those policies as evidence that you are in effect

16  in either an agency relationship with the Nandan group, or that

17  you are somehow liable; you're the employer --

18          MR. FLOYD:  Right, I understand.

19          THE COURT:  -- because they're following your

20  guidelines and your policies.

21          MR. FLOYD:  Right.  And those are not our guidelines

22  and our policies, the defendant's guidelines and policies, and

23  in addition to that, he would need much more than that under

24  the law to create any kind of a relationship that would -- that

25  would get to agency.  There's no day to day control whatsoever

1    of the employment relationship.  In fact, IHG or Hospitality,

2    even though they're not even a defendant here, didn't even know

3    Mr. Gary was employed.

4         They didn't know he was terminated.  There's no

5    reporting relationship between the parties -- between the hotel

6    -- the hotel doesn't have to call to the IHG and say hey, we're

7    thinking about terminating this guy, hiring him, firing him --

8    you know, doing any kind of discipline.  There's absolutely no

9    day to day relationship at all with regard to the employment

10   relationship.

11        THE COURT:  This is merely a licencing agreement that

12   allows the Nandan corporate entity and the owners to use the

13   brand name of Holiday Inn.

14        MR. FLOYD:  Correct.  It's really more for the

15   front-of-the-house, Your Honor.  What the intent of the

16   licencing agreement is is so that a customer at Holiday Inn no

17   matter where they go across the country will experience the

18   same type of hotel, the same basic -- well, I'll call it again

19   -- in the business we call it the front-of-the-house procedures

20   -- the way the hotel looks, the way the food is served, the way

21   the logos look, the cleanliness of the hotel -- that sort of

22   thing.

23        That's what the licencing agreement is meant to

24   control, not the individual day to day operations in the

25   back-of-the-house or the employment relationship.

Gary - Argument                                    18

1             THE COURT:  Okay.  Very well.

2             Anything else, Mr. Gary?

3             MR. GARY:  Well, yeah, Your Honor, I have one other

4    thing to say about that.  Mr. Floyd is going past the fact that

5    in this agreement, Guari Nandan is not even supposed to use

6    Holiday Inn, they're supposed to have their own name up there.

7             THE COURT:  Okay.

8             MR. GARY:  But and in fact when I was working there,

9    everything that I had on said Holiday Inn on it, okay?  Not

10   Guari Nandan doing business as Holiday Inn.  It said Holiday

11   Inn.

12            THE COURT:  Okay.

13            MR. GARY:  And in here somewhere there states that

14   they're not even supposed to use their name, they're supposed

15   to have their own name in the hotel somewhere, so I just don't

16   understand how he can even remotely say that they have no

17   recollection or no type of relationship with their business

18   partner Guari Nandan or Mr. Barchwal or Majethia -- whatever --

19   however you pronounce his last name, I don't know -- I can't

20   pronounce it, but those two individuals are acting as Guari

21   Nandan.

22            THE COURT:  Okay.

23            MR. GARY:  Like I said, the whole thing to me is it

24   just seems shameful that the mere fact that I have to come here

25   and argue to just enforce an employment contract, it's

1  ridiculous.  It seriously is.  And for me to get fired for

2  someone else cursing at me and the general manager doing the

3  same, that's why we're here.

4          THE COURT:  Very well.

5          MR. GARY:  We're not here for no other reason.  I

6  have a right to make 'em enforce contracts, regardless if it's

7  at will or not.

8          THE COURT:  Okay.

9          Well, you have a motion for sanctions.  Let me hear

10  your argument on the motion for sanctions, Attorney Floyd.

11          MR. FLOYD:  Your Honor, the defendant -- corporate

12  defendant IHG had issued in a timely manner its discovery

13  request, interrogatories, requests for production, and

14  admissions.

15          We received no response whatsoever from the plaintiff

16  in response to those requests, despite the defendant having

17  written letters to Mr. Gary asking whether or not he would --

18  whether or not he was going to respond.  He indicated in

19  correspondence that he would respond.

20          But, he failed to respond.  At deposition, the

21  defendant also asked Mr. Gary if he would respond to

22  plaintiff's discovery, and I gave him the option during

23  deposition at that time to either have us go through during

24  deposition the answers to the interrogatories and requests and

25  provide documents, or that he could later -- and we picked a

1  date certain to provide responses to discovery, and Mr. Gary at
2  that time agreed that he would provide written responses to
3  defendant's discovery, all of this well past -- well past the
4  deadline.

5          When that deadline finally passed, we had asked the
6  Court to intervene and to compel Mr. Gary to respond and Your
7  Honor indeed ordered -- I think it was August 1st -- you
8  granted IHG's motion to compel and ordered plaintiff to provide
9  full and complete responses without any objections, and went on
10 to warn plaintiff that if he did not respond within the time
11 provided, that sanctions would be imposed to include
12 essentially disallowing plaintiff from making any claims or
13 supporting any claims for liability against -- against IHG.

14         Your Honor, we've gone to extreme lengths to try to
15 defend this case and obviously we are handicapped when we don't
16 have any idea as to the nature of the claims and the facts
17 supporting Mr. Gary's claims.

18         And we've had to essentially guess at what his claims
19 are and guess at what the facts and circumstances are to
20 support those claims, and I think that's prejudicial and
21 disadvantages the defendant.

22         And here we are on the eve of trial and I think it
23 would be prejudicial to allow Mr. Gary to go forward with a
24 trial and surprise the defendant at trial with evidence that we
25 did not have an opportunity to review before that, so we're

1  asking the Court to grant our motion for sanctions.

2           THE COURT: And the sanction that you are seeking for

3  me to impose is that I preclude him from proceeding on his

4  claims against IHG, correct?

5           MR. FLOYD: That's correct, Your Honor.

6           THE COURT: And that's the only sanction that you're

7  asking me to impose at this time, right?

8           MR. FLOYD: Well, Your Honor, if I could also ask

9  that the claims be dismissed at this point and supplement my

10 motion, I would also ask that the claims be dismissed because I

11 think that's the only way to avoid prejudice in this case.

12          THE COURT: Well, if he can't proceed he's not going

13 to be able to do it on the claim, but you're asking me to go a

14 step further and just dismiss the claims outright at this

15 stage?

16          MR. FLOYD: As an alternative, Your Honor, yes.

17          THE COURT: Okay.

18          MR. FLOYD: Thank you.

19          THE COURT: Very well. Your response, Mr. Gary?

20          MR. GARY: Your Honor, at the deposition, Mr. Floyd

21 asked me questions there on the record, as well as Mr. Lees,

22 together, not separately. Together they asked, and separately

23 they asked. He's asking for sanctions from me stating that I

24 had not given him anything that said that or tied in together.

25 I cannot tie him (sic) together until he sent me this

Gary - Argument                                    22

1  documentation, which is this licencing agreement.  That's the

2  only thing that I have to bind him together with Guari Nandan

3  doing business as Holiday Inn.

4           That's self-evident just by this licencing agreement

5  in the first place, and just for the mere fact that it says 904

6  West Hamilton Street and that's the location of where this

7  entity stands and where I worked at.

8           But I -- I really think that Mr. Floyd has some gall

9  to even ask me for sanctions when you didn't even send me the

10  proper things on time.  I had to -- when I spoke to you the

11  time when you said that I will be over there, I need to be at

12  Mr. Lees' office for a deposition, I told you that he had given

13  me incomplete materials.

14           He stated right on the record that if I had any

15  problem with what he sent me that I wasn't supposed to say it

16  to you, but I was supposed to send him a correspondence in some

17  type of form asking for that information, when he should have

18  just afforded it to me in the first place if he was acting in

19  good faith.

20           And that's the problem we have here, neither one of

21  these individuals have been acting in good faith so that's my

22  argument.

23           If you wish to impose sanctions, I could ask for

24  injunctive -- I need to as a matter of fact, I might as well

25  just ask the Court for leave to amend the complaint to add for

Gary - Argument                                                23

1    injunctive relief and like declaratory relief due to the fact

2    that I need to know what rights that I'm actually -- what

3    rights and liabilities I have in the first place since we need

4    to do that since we're talking about damages anyway in the

5    first instant (sic).

6         So I would like to motion the Court at this time to

7    be able to amend my complaint to include 2000 and D -- oh wait,

8    let me rephrase that -- 42, 2000 and D, which is a statute

9    which if this company is held to have been discriminative

10   toward me for any activities or programs that receive Federal

11   funds, then they are to lose that funding from the Federal

12   Government.

13        So, if he wants to sanction me for not "giving him

14   discovery" or something that I had to wait for him to give to

15   me, and if it's the Court's position to grant that motion, then

16   like I said, I'd rather just amend the complaint to add in

17   every individual.

18        Like you said, facts, I need to add in facts like the

19   Pennsylvania Human Relations Commission not holding a hearing

20   in a timely frame to even deal with this and only issue me a

21   right to sue letter without due process of law.

22        So that's why I said we need to enjoin -- I need to

23   enjoin them, so I'm asking the Court for amendment at this time

24   if that is at all possible for that injunctive relief --

25        THE COURT:  Very well.

1          MR. GARY:  -- if the Court will --

2          THE COURT:  Very well.

3          Let me ask Attorney Floyd, when did you issue the

4     request for interrogatories and the request for production of

5     documents?  Could you just put on the record when that request

6     was made?

7          MR. FLOYD:  Your Honor, I apologize.  I don't -- I

8     don't have with me those documents but in my motion, I did

9     outline those dates.  In my original motion to compel, I

10    outlined all the dates and all of the exchanges between --

11         THE COURT:  Okay.

12         MR. FLOYD:  -- the defendant.

13         THE COURT:  Yes, we don't have the attachment, do we?

14    (Pause)

15         THE COURT:  I have a -- let me just put on the record

16    I have defendant's Intercontinental Hotels Group first request

17    for admission to plaintiff.  That was docketed on July 25th,

18    2012 -- I'm sorry, this is

19         MR. FLOYD:  Your Honor, if it pleases the Court, I'd

20    refer the Court to document number 40 --

21         THE COURT:  Okay, 40 --

22         MR. FLOYD:  -- and paragraph one.  "On March 21st,

23    2012 IHG served plaintiff with interrogatories and requests for

24    production, see Exhibit 1."

25         Of course we didn't initially file the documents in

Floyd - Argument                                25

1  accordance with the rules, but I did attach them once we had to

2  move for -- once we have to move for a motion to compel.

3          THE COURT:  Okay.  And he never responded to those?

4          MR. FLOYD:  That's correct, Your Honor.

5          THE COURT:  Despite the fact that you asked him

6  repeatedly with letters, right?

7          MR. FLOYD:  That's correct, Your Honor --

8          THE COURT:  Okay.

9          MR. FLOYD:  -- and those letters and those dates are

10  outlined in document 40.

11          THE COURT:  And despite I believe in this case we had

12  a conversation -- refresh my recollection, because I  think I

13  talked to -- he first refused to attend the first deposition

14  that had been scheduled?

15          MR. FLOYD:  That's right, Your Honor.

16          THE COURT:  You filed or you requested that I hold a

17  telephone conference and I held a telephone conference and at

18  that telephone conference I directed him to make himself

19  available for deposition, right?

20          MR. FLOYD:  That's correct, and that was in June.

21          THE COURT:  And he made himself available for that

22  deposition, but he did not file an answer to the

23  interrogatories or produce any documents that had been

24  requested?

25          MR. FLOYD:  That's correct, Your Honor, and at that

1  time I gave him the opportunity to walk through while he was

2  with us to make it convenient for him, and he said, well, I'm

3  not going to do that and file them in written form and he said

4  he'd file them in written form at that June 26th deposition.

5          THE COURT:  He seems to be thinking that the

6  deposition is in lieu of the fact that he had to answer those

7  interrogatories and produce those documents.

8          MR. FLOYD:  I think he -- that may be right, but it

9  was clear that it was not because we had that discussion.  He

10  did not want to sit there because indeed, about 2:00, he said

11  to us, I have to go, and he was not willing to stay around and

12  to go through the interrogatories and the requests for

13  admissions and --

14          THE COURT:  How are you prejudiced if he did not

15  answer or give you the answers to the interrogatories or

16  requests for admissions and the deposition took place in any

17  event --

18          MR. FLOYD:  Well, the --

19          THE COURT:  -- so you have --

20          MR. FLOYD:  -- the deposition, at that time we had

21  agreed that he would provide the responses to the

22  interrogatories and to the requests for production and to the

23  requests for admissions, so I did not on the record during the

24  deposition go through all of the information that we had

25  requested in those interrogatories and requests for documents,

1  on the understanding that Mr. Gary would be responding in

2  writing, which he should have done before his deposition, so I

3  was prejudiced in going to the deposition not having the

4  responses to the discovery.

5       And I gave him another opportunity at the deposition

6  to provide written responses, which of course is -- that puts

7  me at a disadvantage also.

8       But even with that additional opportunity, he failed

9  to provide any responses and the prejudice is I don't know, I

10 don't have facts and circumstances that he alleges support his

11 claim and, you know, I'm faced with a trial having to guess

12 still what it is that he is relying on to support his claims.

13          THE COURT:  Very well.  Thank you.

14          MR. FLOYD:  And, Your Honor, one last point, if I

15 could just to respond to Mr. Gary's allegations that I acted

16 improperly with regard to his requests.

17          He sent us a letter and essentially asked -- and I

18 don't have it in front of me but it essentially asked for --

19 you know, support that there was an agency relationship between

20 IHG and the hotel.

21          We don't have anything like that.  I mean, that's

22 obviously part of our argument.  But we did send him the

23 licence agreement, but I sent him only the relevant parts of

24 the licence agreement, which is proper under discovery rules

25 and when he got that, he said I want the whole agreement and we

1  sent him the whole agreement.  There was nothing improper about

2  the way we responded to his discovery.

3              THE COURT:  Very well.  Thank you very much.

4              Let me turn to the defendant -- defendants Nandan and

5  Lobach, motion for summary judgment at document 42, so I'll ask

6  for your patience, Attorney Floyd, and my goal is to try to

7  rule on this case right on the record.

8              MR. FLOYD:  Thank you, Your Honor.

9              MR. LEES:  Good afternoon, Your Honor.

10             THE COURT:  Good afternoon.

11             MR. LEES:  May it please the Court, Paul Lees on

12  behalf of defendants Gary Nandan and Mr. Lobach.  Pending

13  before the Court is the defendant's motion for summary

14  judgment.  As Mr. Gary has himself said today, the only issue

15  before this Court is why was he fired.

16             And what we've produced for the Court in response to

17  his complaint seeking damages under Title VII and under 1981 is

18  a fact record and affidavits establishing why he was fired.

19  Mr. Gary was hired back in February of 2008 and worked at the

20  Allentown Center City Holiday Inn.

21             When he was hired he was given a copy of the hotel's

22  Associate Handbook.  It set forth the general information about

23  the hotel, employee-related programs and also the personnel

24  policies and procedures to be employed at the hotel.

25             Mr. Gary confirmed that he did in fact receive that,

1    that he read it and that he even signed a form at the end of

2    the Associate Handbook confirming that he had received it.

3    Within that handbook, there were certain critical offenses

4    outlined that included cursing in the presence of hotel guests,

5    fighting in front of hotel guests, and which merited immediate

6    termination from employment.

7         Going forward, Mr. Gary also confirmed during the

8    course of his deposition that while he was initially employed

9    as a houseman, that one of the duties and responsibilities

10   which he was asked to do on various occasions was utilize the

11   hotel van to transport hotel guests to and from the hotel to

12   the airport and to the local shopping mall.

13        On March 14th, 2009 he was engaged in doing that and

14   when returning to the hotel, was confronted by an irate hotel

15   guest who was part of an airline flight crew who blamed Mr.

16   Gary for making them late.  Mr. Gary and this hotel guest got

17   into a verbal confrontation where words were exchanged and

18   according to Mr. Gary, the hotel guest cursed at him.

19        THE COURT:  Does it matter whether the hotel guest

20   cursed at him first and he responded in kind or does it matter

21   that he's -- in some of the pleadings, he's taken the account

22   that he learned of the cursing from someone else and that

23   supposedly the person that he cursed at did not even hear him

24   say what he admitted to have said.

25        MR. LEES:  Well, that --

1          THE COURT:  No, do you understand my question?

2          MR. LEES:  I do.

3          THE COURT:  Does it matter?

4          MR. LEES:  And I don't think it matters because first

5    of all, I'm not sure that Mr. Gary's in a position to offer

6    testimony as to what this airline pilot heard or didn't hear.

7          Secondly, by his own deposition testimony, while he,

8    Mr. Gary, didn't hear the hotel guest initially curse at him,

9    when his co-worker said oh, did you hear what he just said to

10   you, that's when Mr. Gary turned to the airline pilot and said

11   well no sir, and cursed at him.

12         And so it was crystal clear that Mr. Gary did

13   confront this hotel guest and cursed directly at him and

14   certainly Mr. Gary knew that the hotel guest heard him.  So --

15         THE COURT:  Well, he admitted that in his deposition,

16   right?

17         MR. GARY:  Negative.

18         MR. LEES:  He did.  And he also admitted in his

19   deposition --

20         MR. GARY:  I object, Your Honor.

21         THE COURT:  Excuse me, this is argument, and I will

22   look at the deposition, but go ahead.

23         MR. LEES:  Mr. Gary also freely admitted that he knew

24   he shouldn't have cursed at this hotel guest and he said that

25   in his deposition.  So what we have under the McDonnell Douglas

1    burden-shifting analysis is while Mr. Gary certainly has

2    established --

3              THE COURT:  But this is a little bit more than the

4    confrontation with the guest.  He then did not heed the general

5    manager's instructions to go home and cool off.

6              MR. LEES:  That's absolutely correct and that's set

7    forth in Mr. Lobach's affidavit, as well as in the termination

8    memo itself that was issued following Mr. Gary's termination.

9    And what Mr. Lobach essentially indicated -- and I had made Mr.

10   Lobach available for a deposition the same day as Mr. Gary.

11             Mr. Gary chose not to depose Mr. Lobach, which is why

12   I supplied the Court with an affidavit as opposed to a

13   deposition transcript.  But what Mr. Lobach has indicated is he

14   was getting ready for a hotel inspection that was taking place,

15   he learns from another hotel employee that Mr. Gary had gotten

16   into some type of verbal dispute with a hotel guest and cursed

17   at him.

18             He then speaks with Mr. Gary and tells Mr. Gary,

19   listen, I don't want to get into what went on between you and

20   the guest, go home for the rest of the day.

21             Mr. Gary won't have anything to do with it and Mr.

22   Gary instead continues to create a scene in the hotel lobby in

23   front of other guests where he's fighting and arguing with the

24   hotel manager, and  that's insubordination, which is yet

25   another basis for the hotel manager's decision, that he gave

1   Mr. Gary the opportunity to go home and cool off and he was

2   going to let well enough be and he was going to use the

3   additional time to try to find out what happened to make a

4   decision as far as what he was going to do with Mr. Gary as a

5   result of his cursing at this hotel guest.

6           But now not only has he cursed at a hotel guest, but

7   he's compounded his problems and his infractions by now arguing

8   with the hotel's general manager and you can't have that type

9   of insubordination when you're running a hotel, and that is why

10  Mr. Gary was terminated. And then --

11          THE COURT: So either or both are sufficient in and

12  of themselves and critical enough to justify immediate

13  termination of his employment status?

14          MR. LEES: They are. In fact, that's clearly set

15  forth as a critical offense under the personnel guidelines in

16  the Associate Handbook.

17          THE COURT: Okay.

18          MR. LEES: And so we have under this McDonnell

19  Douglas burden-shifting analysis a legitimate basis for our

20  decision and the burden then shifts back to Mr. Gary to

21  establish that well, what we said shouldn't be believed and

22  that this was just pretext, that we made it up, and that even

23  though it says in our employee manual that if you curse in the

24  presence of a hotel guest you're going to be terminated

25  immediately, that that's not really why he was terminated, it

1   must have been because of race.

2            And even though Mr. Gary admits in his deposition

3   that his confrontation with this hotel guest, Mr. -- the

4   airline pilot, Mr. Manley, had nothing to do with race, he

5   didn't say anything racial to Mr. Gary, Mr. Gary did not curse

6   back at him because the hotel pilot was white, he was just

7   angry that the hotel pilot in his mind disrespected him and so

8   he responded in kind.

9            This was not racial motivation, this was not racially

10   motivated, this was not a violation of either Title VII or

11   1981, Your Honor.  Plaintiff has the burden to establish not

12   that this was an unfair decision or that another employer

13   wouldn't have treated him this way or that it wasn't a good

14   business decision.

15            He has the burden to establish that this was racially

16   motivated and he has not established that.  And the absence of

17   him coming forward with a triable issue of fact, this matter

18   should not be allowed to proceed forward to a jury trial.

19            THE COURT:  He seems to be suggesting that there was

20   some comment or comment made by the general manager at some

21   unspecified time to some unspecified person that led him to

22   believe that the decision was motivated by his race.

23            MR. LEES:  He does, Your Honor.  He says in his --

24            THE COURT:  But that's a self-serving statement that

25   he made I think in the pleadings.  What evidence is there?

1   What evidence has he produced on that issue?

2           MR. LEES:  He has produced no evidence on that issue.

3   He simply describes an alleged hearsay statement that was made

4   by the hotel manager who was -- and I think Jeff E. he

5   describes as the person who said that, he hasn't produced an

6   affidavit from Jeff E.

7           He certainly didn't confront Mr. Lobach or take Mr.

8   Lobach's deposition to ask him questions or to cross-examine

9   him on any issues presented by that.  And moreover, plaintiff's

10  own description of what took place I think more aptly

11  illustrates why it shouldn't be used as a basis for inferring

12  racial motivation, but actually just the opposite.

13          What had occurred between Mr. -- allegedly occurred

14  between Mr. Lobach and this other employee, Jeff E., was Jeff

15  E. was being corrected for making what was viewed as a racial

16  statement to a co-worker saying that he was going to slap the

17  hell out of this white boy and what he said to allegedly -- Mr.

18  Lobach took him into his office and said you can't do that.

19          You wouldn't like it if somebody classified you by

20  your race, you can't classify other people by their race and he

21  certainly did use, according to Mr. Gary, the "N" word but in

22  the context in which it was used, there's no inference that it

23  was being used in a discriminatory fashion, nor is there any

24  way -- this had nothing to do with Mr. Gary so why would what

25  happened between Mr. Lobach and these two other workers have

1   anything to do with Mr. Gary has never been established.

2              There's been no evidence proven and Mr. Gary has not

3   come forward with any evidence to show a link or causal

4   connection between that alleged event and his termination on

5   March 14th, 2009.

6              THE COURT:  All right.  So you are asking me to

7   dismiss Counts 1, 5, and 6 as to Guari Nandan and as to Mr.

8   Lobach, Count 1, Count 5 and Count 6, right?

9              MR. LEES:  Correct, Your Honor, which are the

10  remaining claims under Title VII and 1981.

11             THE COURT:  Right, which all relate to why was he

12  fired --

13             MR. LEES:  That is correct.

14             THE COURT:  -- to the question of as to the reasons

15  why he was fired.

16             MR. LEES:  That is correct, Your Honor.

17             THE COURT:  Okay.

18             MR. LEES:  Thank you, Your Honor.

19             THE COURT:  Thank you very much.

20             Mr. Gary.

21             MR. GARY:  Yes, Your Honor.

22             THE COURT:  Your response?

23             MR. GARY:  My response, Your Honor, is that Mr.

24  Lobach, the general manager, has shown to me on more than one

25  occasion and others of my race and other co-workers of mine

1   that he does not too particularly like people of color.

2          Due to the fact that Mr. Lees is beating around the

3   bush and not saying -- use the terms as they were written, the

4   fact of the matter is when Mr. Lobach cursed at or -- well,

5   excuse me -- cursed at me when he first came out of the door

6   telling me that I need to get the fuck over it, he's violating

7   his own policies that he's telling me not to do, okay?

8          I was very cordial with Mr. Manley, who was irate

9   because I was doing what my general manager, Mr. Lebran

10  (phonetic) told me to do in the first instance.  After I

11  brought it to Mr. Lebran's attention that the airplane pilots

12  were going to be late, he still directed me to go and to go

13  pick up a guest from the Lehigh Valley Mall.

14         When I returned, Mr. Mowet (phonetic) I think that's

15  how you pronounce his last name -- his first name is David,

16  he's the van driver and at no time during my employment with

17  this company that was -- a van driver was part of my title.

18         I was a chambermaid first, then I moved to be a

19  houseman additionally added on due to the fact as I stated in

20  my past inquiries to the Court that Mr. Lobach wanted me to

21  clean some rooms when I had moved to the position of houseman,

22  I told him I'm not cleaning rooms and doing my other work

23  without being compensated for it.

24         So he said okay, no problem.  That's when I was moved

25  up to $9.50 an hour.  He didn't say that my job was

1  chambermaid, houseman, night manager, van driver and I don't

2  even have a driver's licence in the first instance.  So with

3  what the attorney is stating, as well as I have a notice of

4  determination from the Pennsylvania -- excuse me -- Department

5  of Labor and Industry which states that -- the finding of facts

6  states this.

7         "The claimant was last employed 3/14/2009.  Claimant

8  was discharged for fighting with customer and use of vulgar

9  language.  The employer provided information showing that the

10 claimant was involved in the incident that caused the

11 separation."

12        "The claimant was working at the time of the incident

13 that caused his separation.  The claimant's actions did not

14 show a willful disregard of the employer's interests.  The

15 claimant's actions did not disregard the standards of behavior

16 that the employer had the right to expect from his employees.

17 The claimant's actions do not constitute negligence."

18        "Therefore, the employer has failed in his burden

19 -- therefore under conversation must be allowed."

20        So what I'm telling you, Your Honor, is that if I was

21 terminated for a legitimate purpose, I would have never been

22 able to get Unemployment Compensation in the first instance due

23 to the fact that Mr. Lobach and or -- since he was running the

24 hotel didn't pay my third question earnings or report it to the

25 State of Pennsylvania, which is a violation within itself.

1          But in Mr. Lobach's affidavit that Mr. Lees took from

2   him two days before I was scheduled to -- for that deposition,

3   Mr. Lobach in that deposition state (sic) that he saw the whole

4   thing, he saw me pull up, he saw me get out of the car, he saw

5   me arguing.  He didn't see any of that.  Now he says that he

6   had a witness that somebody else seen it.  I mean, get your

7   story straight.

8          THE COURT:  I'm confused.  Was Mr. Lobach's

9   deposition ever taken in this case?

10          MR. LEES:  It was not, Your Honor.  He was --

11          THE COURT:  What is he talking about?

12          MR. LEES:  I'm not sure, Your Honor.

13          MR. GARY:  You don't know what I'm talking about?

14          THE COURT:  Excuse me -- I know that he's talking

15   from -- he's made reference to --

16          MR. GARY:  Where's the affidavit?

17          THE COURT:  -- to the Unemployment Compensation

18   hearing or findings, but was there a deposition taken of Mr.

19   Lobach at all by you or this defendant -- this plaintiff?

20          MR. LEES:  There was not, Your Honor.

21          THE COURT:  Okay.

22          MR. GARY:  No, there wasn't no deposition taken.

23          THE COURT:  You never took a deposition of anybody in

24   this case, right?

25          MR. GARY:  I haven't took a deposition of anyone in

1  this case --

2          THE COURT:  All right.

3          MR. GARY:   -- no, I have not.

4          THE COURT:  So what I'm relying on is what you have

5  responded to in some of the responses -- pleadings and your

6  memorandum and some of the responsive pleadings to the motion

7  for summary judgment filed by the corporate entity and Guari

8  Nandan, as well as Mr. Lobach, correct?  This is your responses

9  and solely your responses.  You have not taken any independent

10 witness deposition, correct?

11         MR. GARY:  No, I have not taken any --

12         THE COURT:  Okay.

13         MR. GARY:   -- independent witness depositions, but

14 yet and still --

15         THE COURT:  So you --

16         MR. GARY:   -- from the affidavit from Mr. Lobach that

17 was taken two days before my deposition which in that

18 deposition -- in that affidavit, he states that he saw

19 everything.

20         Now he's coming to say that someone else told him

21 that I was arguing -- and people standing there and he was the

22 general manager, like you just said you read my answers to the

23 defendant's motions, then you should also know that how he's

24 going to take a deposition from Mr. Lobach -- or actually

25 excuse me, an affidavit from Mr. Lobach two days before I was

1   to come there, okay?

2          I held my deposition with him, him and Mr. Floyd.

3   Mr. Floyd asked me questions on the record.   Then when I told

4   him that I didn't have time for to answer all of his questions

5   -- so he can't say that I didn't answer any of his questions.

6   That's totally false.   He knows I have answered some of his

7   questions.

8          Just as well, as it was never in my duties to be

9   transporting anyone anyway, and I was doing my job that was

10  delegated to me from my manager which is Mr. Lebron who is now

11  the acting general manager of this Holiday Inn that we are

12  referring to in this case.

13         So how can I get fired for doing what my boss tells

14  me to do and then how can my boss just walk around here like

15  they're -- he can say nigger, he can tell me to get -- get over

16  it.   He's creating a hostile work environment and that's what

17  those documents show or that's what I laid out in my complaint

18  to the Pennsylvania Human Relations Commission in the first

19  instance, whom failed to hold any investigation or any hearing

20  into this matter whatsoever.

21         They just waited until the time frame passed, the 180

22  days or 300 days and after that, they issue a right to sue.

23  That's not justice.   That not the way that this system is

24  supposed to work, okay?

25         In a limited partnership, which is what these

1   individuals are so that they can avoid liability -- oh, I don't
2   know who -- who's responsible, I don't know this, I don't know
3   that.  I mean, I am not here -- I'm here due to the fact that I
4   have a right to make and enforce contracts regardless of I'm at
5   will or not, especially if you are intentionally discriminating
6   toward me because of my race regardless.  That's the facts of
7   it all.

8        He's saying that I didn't produce any facts.  I'm
9   telling you what the facts are.  You used IHG or Holiday Inn --
10  the trademarks policies to fire me, okay?  Mr. Lobach's actions
11  were not in concert with the standards in that employee
12  handbook because he is an employee as well so if that's the
13  case, he should have been terminated as well.

14       He is not even the general manager at this hotel
15  anymore and I'm pretty sure it goes beyond just this lawsuit
16  filed by myself.

17       I should -- you could even look into the records or
18  we could have just watched a film -- they have cameras there --
19  we could have watched a film and see where I was and where Mr.
20  Lobach was and when the time he fired me and how he came in my
21  face yelling and screaming at me when he's telling me that I
22  need to leave out of the hotel.

23       So I was doing that, yet and still I asked him why am
24  I being punished for doing something that you told me to do in
25  the first instance, and that's the problem.  If I do something

1  wrong, then I pay the consequences.  If someone do something

2  wrong to me, I guarantee you, you're going to pay the

3  consequences one way or the other.

4          If it's not -- if I don't get justice here, I'm going

5  to get justice somewhere else, either not in this Court but

6  maybe in another Court.  The facts remains that I can request

7  for this Court to subpoena the individuals who would come here

8  and testify.

9          I don't need to have a affidavit -- an affidavit is

10  just what they're going to say when they come here so that you

11  wouldn't be surprised.  That's all that is.  If I can produce

12  an individual to come down here, I have a right to a trial by

13  jury regardless.

14          The amount is over $20 under the Seventh Amendment so

15  I have a right to a trial by jury regardless.  So if this Court

16  believe that I don't have a case here, then so be it, but we'll

17  just go onto the next Court.

18          THE COURT:  Anything else?

19          MR. GARY:  I'm -- I'm a pro se litigant.

20          THE COURT:  Anything else?

21          MR. GARY:  No.  No, Your Honor, no, I have no -- no

22  other points to make upon Mr. Lees stating that Mr. Lobach

23  acted in good faith because he did not act in good faith and he

24  on more than one occasion as per the documentation that I gave

25  you at the beginning of this hearing, I have a list of 20

1   individuals whom I can call or the Court can subpoena to

2   testify and or appear before the Court.  Like I said, I

3   shouldn't even be here.

4          I'm stressed out enough due to the fact that I can't

5   even take care of my children because I can't even hold a job

6   which I'm qualified to do just because of the color of my skin

7   because of some irate customer and a racist general manager.

8          THE COURT:  I asked before and you said you had

9   nothing else but I'll give you an opportunity again.  Anything

10  else?

11         MR. GARY:  Yes, Your Honor.  The individuals that's

12  named in  this suit here is -- the purpose of that is to show

13  that Mr. Lobach created a hostile work environment which -- or

14  a racially discriminated one where he used terms that was

15  derogatory and negative towards individuals and allowed

16  individuals to be treated other than as equal members of

17  society.

18         THE COURT:  There was no hostile work environment

19  claim filed in this case, correct, Attorney Lees and Attorney

20  Floyd?

21         MR. LEES:  That is correct, Your Honor.  It's an

22  adverse employment action involving the termination only, Your

23  Honor.

24         MR. FLOYD:  That's right, Your Honor.

25         MR. GARY:  Well, do I need to -- to move to amend it,

1   Your Honor?  To add it?  If that's the case --

2              THE COURT:  You've already been given an opportunity

3   to amend and your request to amend is denied at this stage of

4   the game.

5              Anything else?

6              MR. GARY:  So I can't ask for an injunctive relief?

7              THE COURT:  You cannot amend, no.  The request to

8   amend the complaint on the two grounds that you proffered is

9   denied.

10             MR. GARY:  Okay.

11             THE COURT:  Do you have anything else?

12             MR. GARY:  No, Your Honor, I'm done.

13             THE COURT:  Very well.  This is what I intend to do.

14  I'm going to take a five minute break and then I will be back

15  to announce my decision on the pending motions for summary

16  judgment, so in five minutes I shall return to tell you on the

17  record my decision disposing of each of these motions and we

18  will see where we are at the conclusion of my ruling on the

19  four motions pending before me.

20             This case is listed for trial September 10th.  That's

21  next week, correct?

22             MR. LEES:  That's right, Your Honor.

23             MR. FLOYD:  That's correct.

24             MR. LEES:  It's in the trial pool.

25             THE COURT:  Did I see any other request to points for

1   charge or anything along those lines filed in this case?

2               MR. GARY:   No.

3               THE COURT:   I don't think there was any.

4               MR. LEES:   No, no --

5               MR. FLOYD:   No, that's right.

6               THE COURT:   Okay.   I'll talk to you after that about

7   those things in a few minutes as to whether they're necessary

8   to have.   Thank you.

9               But before I do that, let me give you, Mr. Lees, an

10  opportunity to respond to rebuttal because I think the more I

11  hear Mr. Gary, the more he throws out terms that have not been

12  claimed in this complaint such as hostile work environment and

13  some of the statements that he has made which I think I'm

14  hearing for the first time based on the pleadings.   But in any

15  event, do you have any rebuttal?

16              MR. LEES:   Your Honor, the only thing that I would

17  address is that Mr. Gary appears to be arguing that because

18  there were these isolated incidents that had occurred during

19  his one year of employment to other employees, that he's using

20  those as a means of supporting his subjective belief that

21  perhaps his race was the motivation behind Mr. Lobach

22  terminating him and not his admitted knowing violation of

23  company policy and hotel policy regarding cursing in front of

24  hotel guests and fighting with his general manager in the

25  presence of hotel guests.

1  And there's simply nothing that he's come forward

2  with that support his burden that the preferred reason for his

3  termination was protectual, and on that basis, I would ask that

4  summary judgment be granted.

5  THE COURT: Thank you very much.

6  MR. LEES: Thank you, Your Honor.

7  THE COURT: Five minute break and then we will resume

8  in five minutes.

9  THE CLERK: All Rise.

10  THE COURT: Thank you.

11  (Off the record, 3:05 p.m. to 3:15 p.m.)

12  THE COURT: Okay, you may be seated.

13  Very well, we are back on the record in the matter of

14  Robert Gary versus Guari Nandan, et al, Civil Action Number

15  10-2082.  Pending before this Court are the defendant's motion

16  for summary judgment; plaintiff's cross-motion for summary

17  judgment; and defendant's motion for sanctions, particularly

18  defendant Intercontinental Hotels Group, herein after IHG,

19  motion for summary judgment on document 41; defendant's Guari

20  Nandan, LP and Richard Lobach's motion for summary judgment at

21  document 42; plaintiff Guari Nandan's cross-motion -- strike

22  that -- plaintiff Gary's motion for summary judgment against

23  defendants Nandan and Lobach, document 44; and defendant IHG's

24  motion for sanctions, document 46.

25  Gary, a former employee of Holiday Inn in Allentown,

1  Pennsylvania brings claims against Nandan, his former employer,

2  former Holiday Inn General Manager Richard Lobach, and

3  Intercontinental Hotels Group pursuant to Title VII of the

4  Civil Rights Act of 1964, and Titles 42 USC Section 1981,

5  Section 1983, 1985(3) and 1986.

6          Essentially Gary's claims arise out of the

7  termination of his employment in March of 2009 which Gary

8  contends was in retaliation for his complaints about racial

9  discrimination to which he was subjected at the Holiday Inn.

10         More specifically, Gary brings the following counts

11  against all defendants -- Count 1 is a claim under Title 42

12  Section 1981; Count 2, a claim under Title 42 Section 1983;

13  Count 3, a claim under Title 42 Section 1985(3); Count 4, a

14  claim under Title 42 Section 1986; Count 5, a claim under Title

15  42 Sections 2000e-5 which is Title VII; Count 6, Title 42

16  Sections 2000e through 2 or 2000e through T3 (sic), which is

17  also entitled (inaudible)  claim; and Count 7, a claim under 42

18  Section 1981(c).

19         This Court previously dismissed Count 2, 3, 4, and 5

20  against Nandan and Lobach, as well as Counts 5 and 6 against

21  Lobach in his individual capacity, therefore remaining are the

22  following claims -- the claims against Nandan are Counts 1, 5,

23  and 6; the claims against Lobach are Counts 1, 5 and 6 in his

24  official capacity only; and all of the claims against IHG.

25         So let me first address the International Hotels

1  Group motion for summary judgment.  IHG asked this Court to

2  dismiss all claims against them.  IHG asserts basically that it

3  was not Gary's employer, and that it had no control over any of

4  the decisions regarding Gary's employment.

5        In addition, IHG was not involved in any of Gary's

6  hiring or firing in any way, and in any conduct giving rise to

7  Gary's claims.  The undisputed evidence establishes that IHG

8  had no connection whatsoever to the ownership and manager and

9  structure of the hotel at issue in this case.

10        IHG is an international group of companies that

11  franchises several hotel brands.  Holiday Hospitality

12  Franchising Inc, herein after HHFI, is one of the many

13  companies that comprised IHG.

14        It is a separate and distinct entity from IHG, IA --

15  strike that -- HHFI is responsible for maintaining the brand's

16  standards of IHG's hotels including the Holiday Inn brand,

17  which is the hotel where Gary worked.

18        HHFL issued a licence agreement to the co-owners of

19  the hotel at issue in here and I'm going to spell their names

20  -- Ramesh Majethia, and Vinai Barchwal, R-A-M-E-S-H, the last

21  name is spelled M-A-J-E-T-H-I-A.  The second name is Vinai

22  Barchwal, and that would be spelled V-I-N-A-I, the last name is

23  spelled B-A-R-C-H-W-A-L, co-owners that run the hotel in

24  Allentown.

25        IHG is not a party to this licencing agreement.  IHG

1    does not have any ownership interest or financial over the

2    hotel and does not receive any money from the hotel.  The

3    undisputed evidence in this case further establishes that

4    Majethia and Barchwal are co-owners of Guari Nandan in

5    Allentown, an LLC, the general partner of defendant Guari

6    Nandan, LP, which owns and operates the hotel at issue here

7    under the licencing agreement with HHFL.

8            It is undisputed that defendant Richard Lobach was

9    employed as the general manager of the hotel and since IHG does

10   not own or operate a hotel, IHG cannot be and it is not the

11   employer of the individual working -- the individuals working

12   at the Allentown Holiday Inn owned by Guari Nandan, LLP.

13           The evidence also establishes that IHG has no

14   involvement in plaintiff Gary's employment or have any control

15   over the daily operations of the hotel management activities at

16   the hotel in Allentown.

17           Counts 1, 5 and 6 are dismissed against IHG because

18   Gary failed to establish IHG was somehow involved to be

19   connected to the alleged conduct giving rise to his claims.  In

20   fact, at his deposition he admitted IHG has never been involved

21   in any aspect of his employment.

22           Furthermore, Count 2, 3, 4 and 7 are being dismissed

23   against IHG for the same reasons this Court dismissed those

24   claims against Lobach and Guari Nandan, LP.

25           Let me now turn to the motion for summary judgment

Ruling of the Court                                  50

1  filed by Nandan, LP and Lobach.  In their motion, Nandan and

2  Lobach have asked me to dismiss the remaining claims against

3  them.  Nandan and Lobach assert Gary has failed to present

4  facts establishing a race discrimination claim under Title VII

5  in this case.

6       Gary has failed to demonstrate that he was discharged

7  under circumstances that give rise to an inference of unlawful

8  discrimination.  The undisputed evidence established that he

9  was fired for insubordination and cursing at a hotel guest.

10      Gary failed to present any credible, competent

11  evidence to establish that the proffered reasons for the

12  employer for terminating his employment on March 14th of 2009

13  were not legitimate non-discriminatory reasons.

14      Furthermore, he has failed to establish retaliation.

15  I'm going to point to the following facts.  There's a memo

16  attached to I believe the plaintiff's moving papers at document

17  44 -- a letter to Robert Gary that is in the employment file

18  prepared by Richard C. Lobach, Jr. dated March 25th, 2009

19  regarding his termination and basically states that based on

20  Mr. Robert's action of fighting with the guest, "His resistance

21  to accept my offer to go home with pay to cool off, the

22  continued use of vulgar language in the lobby area, I was

23  forced to terminate him based on the employee handbook --

24  Critical Offenses on page 25."

25      The critical offenses outlines on page 25 are number

1    one, use of profanity or other offensive language in the

2    presence of, personal or by telephone, of a guest.  That is a

3    critical offense, item number seven, serious unethical conduct

4    as determined by the company; 13, conduct detrimental to the

5    company operations that result in the negative public relations

6    or guest services; and number 15, fighting -- all the acts of

7    aggression on hotel premises.

8            In this case, the plaintiff in the deposition makes

9    some critical admissions that I think are worthwhile repeating

10   on the record.  When questioned regarding the exchange or

11   exactly what happened and what he did during the confrontation

12   with the airline pilot, and I point to the deposition testimony

13   where he's asked, "What did you say in response to the pilot

14   saying that to you?"

15           "After I first -- I didn't even hear him, I wasn't

16   even paying him any mind until Shawn pointed it out to me.  He

17   said did you hear what he said?"

18           "I said what he -- what the heck did he say?"

19           "He said fuck you and he says -- so he says fuck you

20   so I told him to fuck you," so he makes the admission that he

21   used the profanity on the deposition that was taken back on

22   July 25th of 2012.

23           He further goes on to make an admission regarding the

24   fact that he understood the policy and the handbook and what

25   was required of him when he was questioned -- and I'm looking

1  at the deposition, page 25 of 40, particularly page 94 and 95

2  (sic), a series of questions or responses to questions in which

3  he responds, "I didn't even know that he cursed at me until

4  Shawn pointed it out."

5         "And then in response, you looked at the pilot and

6  you said the F word, you then said yes, exactly."

7         He admitted that he did that.  He was asked, "Did you

8  think it was appropriate for an employee to lose his temper

9  with a hotel guest and to curse at the guest?"

10         Mr. Gary's response, "I don't think it's appropriate.

11  I know it's in the handbook and I am supposed to be -- not

12  supposed to be cursing, but you still -- the guest is not

13  supposed to be cursing at me as well."

14         So in essence, he made an admission regarding the use

15  of profanity against a guest which under the terms of the

16  handbook is sufficient reason in and of itself to terminate his

17  employment because that is a critical offense.

18         Finally, Gary's 1981 claim is hereby dismissed as a

19  matter of law for the same reasons his Title VII claims have

20  been dismissed.  Section 1981 are analyzed under the same frame

21  work as Title VII claims.

22         Accordingly, Section 1981 employment claims that he

23  makes are hereby dismissed for all of the same reasons as

24  Gary's Title VII claims were dismissed.

25         Next I turn to Gary's cross-motion for summary

1    judgment against Nandan, LP and Mr. Lobach. In his

2    cross-motion he asserts he was fired back on March 14th of 2009

3    for racial reasons, however, he admits to arguing and cursing

4    at a hotel guest as I just indicated based on his deposition

5    that is a matter of record on the date in question in violation

6    of the hotel's employee handbook.

7          He submitted his own self-serving affidavit in

8    support of his argument and he alleges further that he was

9    fired because of his race because he once heard from a

10   co-worker that General Manager Lobach used the word "N" to

11   describe a black man when speaking to an African American

12   co-worker.

13         He also argued based on that information that it can

14   be inferred that his own termination was racially motivated.

15   As I said earlier, Gary has not demonstrated that he was fired

16   under circumstances that give rise to an inference of unlawful

17   discrimination.

18         The undisputed evidence established is that he was

19   fired on March 14th, 2009 for insubordination and cursing at a

20   hotel curse, not because of his race. There is no competent

21   admissible evidence that he has produced to rebut the proffered

22   reasons for terminating him back on March 14th of 2009.

23         The employer has proffered a legitimate

24   non-discriminatory reason which he has not rebutted.

25   Accordingly, Gary's cross-motion for summary judgment is

1  denied, independently of having granted the motion for summary

2  judgment filed by IHG, I also will grant the defendant's motion

3  for sanctions in this case based on failure to comply with

4  discovery after having been properly issued a request for

5  discovery despite the fact that many times defense counsel

6  wrote letters asking for him to respond, and that even at the

7  deposition which has been rescheduled I believe twice, defense

8  counsel gave him an option as to how to handle the responses to

9  the discovery requests.

10         Even then, the defendant did not comply and for those

11  reasons, separate and apart from the merits of the claim, I

12  think that an appropriate sanction in this case would be to

13  dismiss the claims against IHG with prejudice.  I think it will

14  now be sufficient and it will be a tremendous waste of time to

15  dismiss or to prevent him from putting on any evidence against

16  IHG at trial.

17         I think that the appropriate remedy for violation of

18  the discovery order in this case is for this Court to dismiss

19  his claims with prejudice on that ground alone, so as far as

20  the record is concerned, there are two separate grounds for

21  which I will grant the motion to dismiss all of the claims

22  against IHG.

23         One is on the merits, and secondly as a sanction for

24  failure to comply with the discovery order and the discovery

25  request that defense counsel filed in this case.  Accordingly,

1  because I have granted the defendant's motion for summary

2  judgment, there is no need to prepare for trial in this case

3  and there is no need to engage in any further discussion

4  regarding any of the items that are normally the subject of a

5  final pretrial conference.

6          And, I will prepare an order reflecting my ruling and

7  incorporating by reference my discussion on the record as to

8  the reasons for my granting the defendant's separate motions

9  for summary judgment at document 41 and at document 42.

10         Anything else?

11         MR. FLOYD:  No, Your Honor, not from defendant IHG.

12         THE COURT:  Anything else, Mr. Gary?

13      (Pause)

14         MR. GARY:  (No response).

15         THE COURT:  Very well.  Is there anything else I

16  should add to the record that I have omitted or failed to

17  address?

18         MR. LEES:  No, Your Honor.

19         MR. FLOYD:  Your Honor, the only other issue in our

20  motion for sanctions was that we had asked for costs and --

21         THE COURT:  What is the cost?

22         MR. FLOYD:  Well, we would have submitted later an

23  affidavit as to cost if the Court so pleases.

24         THE COURT:  Very well.  Very well, why don't you

25  submit an affidavit as to cost and I will reserve ruling on

1    that issue as to whether -- I already granted the sanctions but

2    I will reserve and rule as to whether to award your costs or

3    not --

4         MR. FLOYD:  Thank you, Your Honor.

5         THE COURT:  -- but you could submit it.  Do you have

6    a sense of what?

7         MR. FLOYD:  I really don't, and we asked for costs in

8    the motion for sanctions but I thought that if I --

9         THE COURT:  That's why I asked you whether you were

10   pursuing that.

11        MR. FLOYD:  Yes, I understand, Your Honor, and at the

12   time, I didn't think and didn't ask for it at the time but I'd

13   just renew the request and we would be happy to submit an

14   affidavit for cost to the Court on the Court's --

15        THE COURT:  Well, you can submit it.  That doesn't

16   mean you're going to get it.

17        MR. FLOYD:  I understand.

18        THE COURT:  Okay, okay.  Thank you very much.

19        MR. FLOYD:  Thank you, Your Honor.

20        MR. LEES:  Thank you, Your Honor.

21        (Matter concluded, 3:33 p.m.)

22                            * * *

23

24

25

57

# C E R T I F I C A T I O N

        I, Diane Gallagher, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


_____       _____

DIANE GALLAGHER                    DATE

DIANA DOMAN TRANSCRIBING